Gregory O. **FRANICH,** Appellant,

v.

The **REAL ESTATE COMMISSION OF the STATE of Iowa,** Appellee.

No. 03–0372.

Supreme Court of Iowa.

June 16, 2004.

Mark R. Fowler and Catherine Cartee of Gomez, May, Cartee & Schutte, Davenport, for appellant.

Thomas J. Miller, Attorney General, and Pamela D. Griebel, Assistant Attorney General, for appellee.

TERNUS, Justice.

Appellee, Iowa Real Estate Commission, found the appellant, Gregory Franich, had engaged in a practice harmful or detrimental to the public in violation of the Iowa Code and agency rule. *See* Iowa Code § 543B.29(3) (2001); Iowa Admin. Code r. 193E—1.31 (now Iowa Admin. Code r.

193E—7.4). As a sanction, the Commission permanently prohibited the marketing plan that had been found to be a prohibited practice. The district court affirmed the agency's decision on judicial review. Franich filed this appeal, and we also affirm.

## I. *Background Facts and Proceedings.*

Franich is a licensed real estate broker in the Quad Cities and the owner of Symmetry Mortgage Corporation, a licensed real estate firm. Franich and Symmetry Mortgage are licensed in Illinois and Iowa. Symmetry Mortgage operates as a mortgage broker and a real estate broker. As a mortgage broker, it obtains financing from one of three institutions that loan money to Symmetry Mortgage's clients and pay a broker's commission to Symmetry Mortgage. Symmetry Mortgage operates its real estate brokerage business under the trade name of Symmetry Real Estate.

The marketing plan at issue in this proceeding involves the relationship between the mortgage financing offered by Symmetry Mortgage and the real estate brokerage services offered by Franich d/b/a Symmetry Real Estate. Under this plan, Symmetry Mortgage offers interest rates below regular market rates to home buyers using Franich's real estate brokerage services for the transaction. Symmetry Mortgage is able to tender this discount by forgoing its mortgage broker commission. Buyers may obtain mortgage financing through Symmetry Mortgage without using Franich for the underlying real estate transaction, but such buyers must then pay market interest rates. This marketing strategy is advantageous to Franich because his real estate broker's commission is much higher than the commission earned by Symmetry Mortgage as a mortgage broker. Thus, Franich believes it is to his financial advantage to sacrifice the mortgage commission to draw buyers to his real estate brokerage business where he can earn the higher real estate commission.

In April 2001 the Commission received a complaint from another agent alleging that Franich, while acting as a mortgage broker for Symmetry Mortgage, offered a lower rate to a potential borrower, M.B., if M.B. would change realty companies and hire Symmetry Real Estate as his real estate agent. At a later hearing before the Commission on charges generated by this complaint, Franich admitted he had discussed the possibility of lower interest rates with M.B. if M.B. switched to Symmetry Real Estate, but contended he told the buyer that this option existed only if the property purchased was in Illinois. Franich conceded, however, that he offered the reduced rate mortgage proposal to potential Iowa clients through his website, which did not limit this opportunity to Illinois property.

After conducting an evidentiary hearing, the Commission issued its decision, stating that it could not conclude by a preponderance of the evidence that Franich had offered M.B. a lower interest rate if he bought property *in Iowa* using Symmetry Real Estate as his agent. The Commission found such an offer was made to Iowa residents on Franich's website, however, and held that this offer violated Iowa Administrative Code rule 193E—1.31(6), (7), defining "prohibited practices" that are deemed unethical or harmful or detrimental to the public within the meaning of Iowa Code section 543B.29(3). Because the matter was one of first impression, the only sanction imposed by the Commission was a permanent prohibition of "the tying arrangement" proposed by Franich. The Commission's decision was affirmed by the district court on judicial review.

## II. *Issues on Appeal.*

Franich raises three issues on appeal. First, he asserts the Commission erroneously ruled that Franich's marketing plan is a tying arrangement. Second, Franich claims his proposed business incentive is not harmful or detrimental to the public and therefore the Commission erred in prohibiting it. Finally, Franich contends the Commission erred in concluding his proposal violated the agency rule defining prohibited practices.

In considering these allegations of error, we give deference to the view of the Commission because the legislature has authorized the Commission to "adopt rules to carry out and administer the provisions of ... chapter [543B]." Iowa Code § 543B.9; *see also id.* § 543B.18 (giving Commission authority to adopt rules necessary for licensing real estate brokers). The provisions of chapter 543B include several sections regulating the relationship between licensees and parties to a real estate transaction. *See id.* §§ 543B.56–.64. Moreover, in addition to having the responsibility to license brokers, the Commission has been empowered to investigate and adjudicate complaints against licensees. *See id.* §§ 543B.34–.35. Because the administration and regulatory enforcement of chapter 543B has "been vested by a provision of law in the discretion of the agency," we give "appropriate deference" to the view of the Commission with respect to the interpretation of chapter 543B and the rules adopted pursuant to the authority granted in that chapter. *Id.* § 17A.19(11)(c).

## III. *Tying Arrangement.*

■ In its decision, the Commission characterized Franich's marketing plan as a "tying arrangement." Franich claims this "finding" is erroneous under the facts of this case, and, if the marketing plan is not a tying arrangement, then it cannot be prohibited by the Commission. Ordinarily, because the Commission is authorized to make factual findings with respect to charges brought against a licensee, *see id.* § 543B.41, our task on appeal would be to determine whether the Commission's finding is "supported by substantial evidence in the record ... when that record is viewed as a whole," *id.* § 17A.19(10)(f). If it is not adequately supported by the record, this court would then need to decide whether the Commission's interpretation of the law as prohibiting a practice that does not qualify as a tying arrangement is "irrational, illogical, or wholly unjustifiable." *See id.* § 17A.19(10)(l). We find it unnecessary to determine whether there is a factual basis for the Commission's finding, however, because even if Franich's proposed incentive is not a tying arrangement, the Commission's conclusion that a practice other than a tying arrangement could violate the applicable state law is not "an irrational, illogical, or wholly unjustifiable interpretation" of that law. A review of the regulatory basis for the Commission's prohibition of Franich's marketing plan explains our conclusion.

The Commission is authorized to revoke or suspend the license of a real estate broker who engages "in unethical conduct or [a] practice harmful or detrimental to the public." *Id.* § 543B.29(3). Pursuant to its rulemaking authority, the Commission has adopted the following rule, which we quote in pertinent part:

> **Prohibited practices.** .... A licensee participating in any of the practices described in this rule shall be deemed to be engaging in unethical conduct and a practice harmful or detrimental to the public within the meaning of Iowa Code section 543B.29(3).
>
> ....
>
> **1.31(6)** Any arrangement in which a real estate licensee enters into an agree-

ment with a mortgage broker, bank, savings and loan, or other financial institution pursuant to which the making of a loan is directly or indirectly conditioned upon payment of a real estate commission to the real estate licensee.

1.31(7) Any arrangement pursuant to which a real estate licensee who is affiliated with a mortgage broker, bank, savings and loan association or other financial institution benefits from the practice by the affiliated financial institution of granting mortgage loans or any other loan or financial services or the availability of other benefits directly or indirectly conditioned upon the use of the real estate services of the affiliated licensee.

This rule is intended only to regulate the licensing of real estate licensees in the state of Iowa.

Iowa Admin. Code r. 193E—1.31(6), (7) (now Iowa Admin. Code r. 193E—7.4(6), (7)). Franich's marketing plan was held to be a violation of this rule.

As a review of rule 193E—1.31(6), (7) reveals, the phrase "tying arrangement" does not appear in this regulation. Tying arrangements are often deemed per se violations of antitrust laws such as the Sherman Act. *See N. Pac. Ry. v. United States,* 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545, 549–50 (1958) (noting that certain agreements, including tying agreements, are often deemed unlawful as illegal restraints on trade). We find nothing in chapter 543B or the agency's rules that would limit the scope of "unethical conduct" or "practice[s] harmful or detrimental to the public" to those practices that violate federal antitrust law.

We conclude, therefore, that the Commission's characterization of Franich's marketing plan as a tying arrangement was only that—a characterization. The Commission does not define an unethical or harmful practice using that terminology

and its borrowing of that term in its decision does not incorporate federal antitrust law into chapter 543B. Furthermore, the Commission's failure to limit prohibited practices as defined in rule 193E—1.31 to practices that meet the test for a tying arrangement or other anticompetitive agreement under federal law is not irrational, illogical or wholly unjustifiable. The obligations of a licensee are much broader than simply avoiding anticompetitive conduct. *See* Iowa Code §§ 543B.29 (listing conduct by licensee that could warrant revocation or suspension of license), .56(2) (enumerating duties of licensee to client). As the Commission stated in its decision, one of the objectives of the rule at issue here was to ensure that licensees avoided situations giving rise to divided loyalties that might adversely affect a licensee's ability to fulfill his or her professional obligations to the client. *See id.* § 543B.56(2)(*a*) (requiring licensee to place "client's interests ahead of the interests of any other party"); *Menzel v. Morse,* 362 N.W.2d 465, 474 (Iowa 1985) ("The relationship between a broker or agent and his or her principal is confidential and fiduciary, including a strict duty of undivided loyalty and disclosure.").

Because the Commission may prohibit practices that are not tying arrangements, it is irrelevant whether Franich's incentive plan is such an agreement. Therefore, we need not decide whether there is substantial evidence in the record to support the Commission's characterization of Franich's plan as a tying arrangement.

### IV. *Harm or Detriment to the Public.*

▪ Franich claims that his marketing plan will cause no harm or detriment to the public and therefore cannot be prohibited by the Commission. In the exercise of its rulemaking authority, however, the Commission has determined that any

practice falling within rule 193E—1.31 is, by definition, unethical conduct or a practice that is harmful or detrimental to the public. Thus, contrary to Franich's contention, it is not necessary for the Commission to make a specific finding in a particular case that the practice at issue is unethical or is harmful or detrimental to the public.

■ The only question, then, is whether the Commission's rule defining a practice as per se unethical or as harmful or detrimental to the public is "an irrational, illogical, or wholly unjustifiable interpretation" of section 543B.29(3). *See* Iowa Code § 17A.19(10)(*l*). Focusing on paragraphs (6) and (7), as those are the only provisions involved in the matter before us, we conclude the Commission's interpretation of the statute is not irrational, illogical, or wholly unjustifiable.

Franich's primary argument with respect to this issue is that *he* would never be swayed from his duty of loyalty by his self-interest arising from his dual capacity as a real estate broker and a mortgage broker. The Commission's regulatory view is much broader. It has fashioned rules that are preventative and prophylactic, prohibiting practices that it deems are unethical or carry a high risk of harm or detriment to the public. It is not irrational for the Commission to take this approach, rather than that apparently advocated by Franich, which would seem to allow any practice so long as it does not result in actual harm to a particular person. Importantly, the Commission's interpretation of section 543B.29(3) is consistent with the legislature's statement in that statute that "[p]roof of actual injury need not be established." *Id.* § 543B.29(3).

For these reasons, the Commission's interpretation of section 543B.29(3), as reflected in rule 193E—1.31(6), (7), is not irrational, illogical, or wholly unjustifiable.

We find no basis for reversal in this assignment of error.

V. *Violation of Rule 193E—1.31(6), (7).*

Franich claims the Commission's application of its rules to his conduct is "an irrational, illogical, or wholly unjustifiable application of law to fact." *See* Iowa Code § 17A.19(10)(*m*) (defining standard of review when application of law to fact "has clearly been vested by a provision of law in the discretion of the agency"); *id.* § 543B.41 (vesting such discretion in the Commission). We agree that Franich's proposed marketing plan does not fall within the clear terms of paragraph (6) of the agency rule, and therefore, the Commission's conclusion that his plan is prohibited under this paragraph is wholly unjustified. We reach a contrary conclusion, however, with respect to the Commission's determination that the plan violates paragraph (7). We separately address the alleged violations.

■ A. *Rule 193E—1.31(6).* This rule prohibits an arrangement in which a mortgage broker conditions "the making of a loan directly or indirectly . . . upon payment of a real estate commission to the real estate licensee." Under the incentive plan advertised by Franich, Symmetry Mortgage will make a loan to any qualifying borrower, regardless of whether the borrower uses Symmetry Real Estate as the borrower's broker in the underlying real estate transaction. Although the interest rate charged to the borrower is determined by whether Symmetry Real Estate is the borrower's broker, the loan itself is not. Therefore, we conclude there is no factual basis for the Commission's ruling that Franich's marketing plan violated paragraph (6) of the Commission's rule.

B. *Rule 193E—1.31(7).* Rule 193E—1.31(7) is broader in scope than rule 193E—1.31(6). Paragraph (7) prohibits arrangements in which "a real estate licensee who is affiliated with a mortgage broker ... benefits from the practice by the affiliated financial institution of granting mortgage loans ... or the availability of other benefits directly or indirectly conditioned upon the use of the real estate services of the affiliated licensee." Iowa Admin. Code r. 193E—1.31(7). Franich, a real estate licensee, is affiliated with Symmetry Mortgage, a mortgage broker. Franich and Symmetry Mortgage have an arrangement whereby Symmetry Mortgage gives borrowers the benefit of a lower interest rate if the borrower uses the services of Franich, the affiliated licensee. The Commission's application of its rule to this arrangement, resulting in the conclusion that the arrangement was a prohibited practice, is neither illogical, irrational, nor wholly unjustifiable. Therefore, the Commission did not err in permanently prohibiting this practice.

**AFFIRMED.**