# IN THE SUPREME COURT OF IOWA

No. 14–0231

Filed June 5, 2015
Amended October 28, 2015

**DES MOINES AREA REGIONAL TRANSIT AUTHORITY**
and **UNITED HEARTLAND,**

      Appellants,

vs.

**ARBREINA YOUNG,**

      Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Eliza J. Ovrom, Judge.

An injured worker awarded workers' compensation benefits following a hearing seeks further review of a decision by the court of appeals denying the assessment of expenses of a medical examination as costs of the hearing taxed to the employer. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

David L. Jenkins of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellant.

Robert E. Tucker of Tucker Law Office, Des Moines, for appellee.

**CADY, Chief Justice.**

In this workers' compensation appeal, we must decide whether Iowa Code section 85.39 (2009) provides the exclusive method for reimbursement of an independent medical examination obtained by a claimant or if the workers' compensation commissioner may tax the expense of the examination as costs incurred in the hearing under an administrative rule authorizing the taxation of costs of obtaining reports by doctors. In this case, the deputy workers' compensation commissioner taxed as costs to the employer a medical examination obtained by the worker outside of the provisions of section 85.39. The workers' compensation commissioner and the district court affirmed the taxation of the cost. On appeal, the court of appeals reversed, holding the reimbursement would be inconsistent with Iowa Code section 85.39. On our review, we affirm the decision of the court of appeals and remand the case to the district court to further remand to the commissioner for further proceedings consistent with this opinion.

## I.  Factual Background & Proceedings.

The Des Moines Area Regional Transit Authority (DART) employed Arbreina Young as a bus driver. On June 2, 2009, the bus she was driving collided with an empty vehicle on DART premises. She sought medical treatment for a back injury and returned to work on June 8, 2009. She was reassigned to perform light work.

Young received physical therapy for her injury and was sent by DART to an orthopedic surgeon, Dr. Daniel McGuire. He determined surgery would not aid in Young's healing. Dr. McGuire referred Young to Dr. Donna Bahls for pain management. Dr. Bahls treated Young from August 2009 to November 2011. Young regularly attended physical therapy from June 2009 through March 2010.

On March 18, 2010, Young went to Dr. Jacqueline Stoken for a medical examination. The examination was not authorized by DART, but arranged independently by Young. Dr. Stoken examined Young, reviewed her medical records, and drafted a report. In the report, Dr. Stoken concluded Young reached maximum medical improvement (MMI) on March 11, 2010, and suffered a permanent disability to her back. She assigned Young a fifteen percent body-as-a-whole impairment rating. Dr. Stoken also imposed work restrictions.

On April 16, Young underwent a functional capacity evaluation. The evaluation found she should be limited to light to medium categories of work. On May 18, Dr. Bahls determined Young had reached MMI, suffering a permanent disability to her back, and assigned her a five percent body-as-a-whole impairment rating. She also adopted the restrictions recommended by the functional capacity evaluation.

Young filed a workers' compensation claim on December 29, 2010, and the case proceeded to a hearing before a deputy workers' compensation commissioner. At the hearing, Young submitted the report from Dr. Stoken as evidence. Following the hearing, the deputy commissioner found Young suffered a permanent partial disability to her back resulting in a twenty-five percent reduction in earning capacity. The deputy commissioner also taxed as a cost against DART the expense of Dr. Stoken's examination and report under the administrative rule governing the assessment of costs in a hearing. The fee for the examination and report was $2800.

The commissioner affirmed the decision of the deputy commissioner. DART filed for judicial review. The district court affirmed the decision of the commissioner. The district court held that the reimbursement was proper under Iowa Code section 86.40 and Iowa

Administrative Code rule 876—4.33, as the "statute and corresponding rule give the Workers Compensation Commissioner discretion to award costs related to hearings before the agency."

DART appealed, and we transferred the case to the court of appeals. The sole issue raised concerned the award as a cost of the examination and report by Dr. Stoken. The court of appeals reversed the district court's ruling. It found the practice of assigning the expense of an examination as a cost under the rule would defeat the statutory requirements governing the reimbursement of an independent medical examination. Further, the court of appeals determined that Dr. Stoken's bill was a charge for the examination, not a report, as required by the language of Iowa Administrative Code rule 876—4.33. Young sought and we granted further review.

## II. Scope of Review.

Our review of this workers' compensation appeal is governed by the Iowa Administrative Procedure Act, Iowa Code chapter 17A. *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 463 (Iowa 2004). Iowa Code section 17A.19(1) entitles parties who are "aggrieved or adversely affected by any final agency action" to judicial review. Iowa Code § 17A.19(1). "We apply the standards of section 17A.19(10) to the Commissioner's decision and decide whether the district court correctly applied the law in exercising its [section 17A.19(1)] judicial review function." *Lakeside Casino v. Blue*, 743 N.W.2d 169, 172–73 (Iowa 2007). If we reach the same conclusions as the district court, " 'we affirm; otherwise, we reverse.' " *Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 518 (Iowa 2012) (quoting *Mycogen Seeds*, 686 N.W.2d at 464).

"[W]e give an agency substantial deference when it interprets its own regulations," so long as such interpretation is not in violation of the

rule's plain language and clear meaning. *Boehme v. Fareway Stores, Inc.*, 762 N.W.2d 142, 146 (Iowa 2009) (" 'When the language of a statute is plain and its meaning clear, the rules of statutory construction do not permit us to search for meaning beyond the statute's express terms.' " (quoting *Rock v. Warhank*, 757 N.W.2d 670, 673 (Iowa 2008))). When discretion has been vested in the commissioner, "we reverse only if the commissioner's application was 'irrational, illogical, or wholly unjustifiable.' " *Larson Mfg. Co. v. Thorson*, 763 N.W.2d 842, 850 (Iowa 2009) (quoting Iowa Code § 17A.19(10)(*l*)). On the other hand, if discretion has not been clearly vested, "then the court must disregard any interpretation by the agency that it finds erroneous." *Evercom Sys., Inc. v. Iowa Utils. Bd.*, 805 N.W.2d 758, 762 (Iowa 2011). We "are not bound by the agency's interpretation [of law] and may substitute our own to correct a misapplication of law." *SZ Enters., LLC v. Iowa Utils. Bd.*, 850 N.W.2d 441, 449 (Iowa 2014); *accord* Iowa Code § 17A.19(10)(*c*).

When interpreting statutes, we look to the intent of the legislature based on the words used and what interpretation will best effect the purpose of the statute. *IBP, Inc. v. Harker*, 633 N.W.2d 322, 325 (Iowa 2001). It is well established that "[w]e liberally construe workers' compensation statutes in favor of the worker," *Ewing v. Allied Constr. Servs.*, 592 N.W.2d 689, 691 (Iowa 1999), because "[t]he primary purpose of the workers' compensation statute is to benefit the worker and his or her dependents, insofar as statutory requirements permit," *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 188 (Iowa 1980).

### III. The Positions of the Parties.

DART argues that Iowa Code section 85.39 occupies the entire field for the reimbursement of what has become known as an independent medical examination (IME), and therefore, the commissioner cannot

provide for the reimbursement of an IME outside the framework of section 85.39. Young argues the process works to the disadvantage of the employee. She claims it is unfair and impractical to wait to obtain an IME until after the employer has had the employee examined by a physician of the employer's choice. For example, Young asserts that an employee, who must wait under section 85.39 to obtain a reimbursable examination with the employee's choice of physician until after the employer's choice of physician has performed an examination, may be unable to file a timely claim because the employer could refuse to establish an impairment rating and, in effect, prevent the employee from filing a claim. As to the question of precisely what costs may be taxed, Young argues the physical examination is part of the cost of obtaining the doctor's report and so can be taxed at the commissioner's discretion as hearing costs.

The deputy commissioner found that Dr. Stoken's IME report did not qualify for reimbursement under Iowa Code section 85.39 because it was premature. However, the deputy noted that an IME is "routinely awarded as costs" under the rule because section 85.39 limits reimbursement to a single examination. Further, the deputy commissioner found the rule was not limited to an assessment of the costs of the report but could include the underlying examination. The commissioner affirmed, finding the fee was properly assessed under the rule and that the cost of the report included the time spent examining the claimant and reviewing the records.

The district court held that section 85.39 did not control the awarding as a cost of Dr. Stoken's IME because it was at a time not contemplated in the statute. However, the court combined the discretion vested in the commissioner to award costs under section 86.40 with our

general principle of construing workers' compensation statutes liberally in favor of the worker to give deference to the commissioner's interpretation that he had the authority to tax as a hearing cost an IME not covered by section 85.39.

### IV. Analysis.

When an injury is sustained by a worker covered by our system of workers' compensation, a statutory process exists that not only directs the treatment and care for the worker, but also the future examination for any disability resulting from the injury following the healing period. *See* Iowa Code §§ 85.27, .39. However, the two processes are separate and operate with different objectives.

The statutory process first tasks the employer with the responsibility to provide medical and related health care to the injured worker. *See id.* § 85.27(1). This obligation is focused on the treatment and rehabilitation following the injury and generally authorizes the employer to select the care providers. *Id.* § 85.27(4). If the employee is dissatisfied with the care provided, a process exists for the selection of alternative care. *See id.* Additionally, an injured worker can always seek an alternative care provider at the worker's own expense.

A separate component of the process, however, is devoted to the examination of an injured worker for the purpose of ascertaining "the extent and character of the injury" for purposes of paying benefits in the event of a disability resulting from the injury. *Daugherty v. Scandia Coal Co.*, 206 Iowa 120, 124, 219 N.W. 65, 67 (1928); *see also* Iowa Code § 85.39. These benefits are paid to the employee by the employer. Iowa Code §§ 85.33–.34.

Under the evaluation process, an injured worker is required to submit to an examination by a physician selected by the employer at the

employer's expense as often as reasonably required. *Id.* § 85.39. At the same time, the employee is entitled to have a physician of the employee's choice, at the employee's own expense, present to participate in the examination. *Id.*

If the evaluation by the physician retained by the employer includes a permanent disability rating and "the employee believes this evaluation to be too low," the employee may obtain a subsequent examination by a physician of the employee's choice and be reimbursed by the employer for the reasonable fee of the examination, plus transportation expenses. *Id.* The employee is required to apply to the commissioner to receive this reimbursement and must provide notice to the employer and the employer's insurance carrier. *Id.* The process is known as an IME because the examination is independent of the examination done by the physician selected by the employer. It can apply, subject to approval by the commissioner, each time an employer requires the employee to submit to an evaluation of permanent disability by a new physician selected by the employer.

Although the statute sets forth a process to follow in evaluating injured workers following maximum medical improvement, the statute does not preclude an employee from seeking evaluations outside the statutory process at the employee's own expense. Additionally, the process does not preclude a treating physician from offering a disability rating. The statutory process balances the competing interests of the employer and employee and permits the employee to obtain an independent medical examination at the employer's expense. *See id.*; *IBP, Inc.*, 633 N.W.2d at 327 ("[I]t is apparent that the legislature intended to balance the competing interests of the employee and employer with respect to the *choice* of doctor."). An employer, however, is

not obligated to pay for an evaluation obtained by an employee outside the statutory process. *See IBP, Inc.*, 633 N.W.2d at 327 (limiting reimbursable disability evaluations to when the "physician *chosen by* the employer gives [an unsatisfactory] disability evaluation").

An injured worker needs to be evaluated by a physician under the workers' compensation law to determine an award of compensation for permanent disabilities. *See* Iowa Code § 85.34. The assessment is a critical component to an award of benefits for permanent disabilities. *See id.* § 85.34(2)(*u*)–(*v*). If the employer and employee are unable to agree on the medical assessment of the disability or unable to reach a settlement, a claim for benefits by the employee is decided by the workers' compensation commissioner following a hearing at which the medical evidence of a disability is presented. Iowa Code §§ 86.14, .17; Iowa Admin. Code r. 876—4.18 ("Any relevant medical record or report served upon a party . . . shall be admissible as evidence at hearing of the contested case . . . ."). This evidence is commonly presented in the form of a written report. *See* Iowa Admin. Code r. 876—4.18. Under Iowa Code section 86.40, "[a]ll costs incurred in the hearing . . . shall be taxed in the discretion of the commissioner." Under rules promulgated by the commissioner, the assessment of costs under section 86.40 include "the reasonable costs of obtaining no more than two doctors' or practitioners' reports." Iowa Admin. Code r. 876—4.33.

The issue presented in this case pits the assessment-of-costs rule against the statute governing evaluations for purposes of disability ratings. The question to be resolved is whether the commissioner can tax the fees of a physician arising from the evaluation of an employee done outside the process set forth in Iowa Code section 85.39 as "costs incurred in the hearing" when the employee submits a written report of

the evaluation at the hearing. *See* Iowa Code § 86.40. We must decide if the assessment-of-costs rule is limited to the cost of the doctor's report or whether the rule also includes the fees of the underlying medical examination that was the subject of the report.

We recognize the resolution of this dispute involves an administrative rule, but it more fundamentally concerns two statutes. A rule promulgated by the workers' compensation commissioner cannot exceed the statutory authority to promulgate the rule. *See Wallace v. Iowa State Bd. of Educ.*, 770 N.W.2d 344, 348 (Iowa 2009) ("When rules adopted by an administrative agency exceed the agency's statutory authority, the rules are void and invalid."). Our legislature only granted the commissioner discretion to tax "[a]ll costs incurred *in the hearing* before the commissioner." Iowa Code § 86.40 (emphasis added). It did not grant the commissioner authority to restructure the statutory process governing evaluations of permanent disabilities and the employer's statutory obligation to reimburse the employee for an independent evaluation. *See id.* § 85.39. In this respect, we emphasize that we do not defer to the commissioner's interpretation of a statute if the interpretation is beyond the scope of the powers delegated by the governing statute. *See* Iowa Code § 17A.19(10)(*b*)–(*c*); *Wallace*, 770 N.W.2d at 348; *see also Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 256–57 (Iowa 2012) (examining when the commissioner has the authority to interpret a statute). Thus, the fundamental question is whether the legislature intended section 86.40 to provide a means to seek reimbursement for disability evaluations independent of section 85.39.

The undisputed facts of this case highlight the statutory conflict presented by the commissioner's interpretation of administrative rule 876—4.33. Under the commissioner's interpretation, a worker can

obtain an evaluation independent of the statutory process and nevertheless be awarded reimbursement for the evaluation fee under the statutory and regulatory procedure governing "costs incurred in the hearing." Iowa Code § 86.40.

When two statutes are applied in a conflicting manner, we "must attempt to harmonize them in an effort to carry out the meaning and purpose of both statutes." *Kelly v. State*, 525 N.W.2d 409, 411 (Iowa 1994). Our legislature would not have written one statute to supersede another. Nevertheless, it is possible to read sections 85.39 and 86.40 so they do not conflict with each other. Section 85.39 addresses reimbursement for a physician's examination fee and is silent on the cost of a subsequent report of that examination needed for a hearing. Instead, section 86.40 addresses the costs "incurred in the hearing." If this language in section 86.40 includes the fees of an evaluation incurred prior to the report, then section 86.40 would largely render the reimbursement provision in section 85.39 superfluous. However, if section 86.40 is confined to costs attributable to the hearing and excludes expenses incurred for medical treatment and evaluations, the conflict is eliminated.

Additionally, the language of the rule promulgated by the commissioner lends itself to a construction that is harmonious with the two statutes. *See* Iowa Admin. Code r. 876—4.33 ("Costs taxed . . . shall be . . . the reasonable costs of obtaining . . . reports."). A "report" is a "formal oral or written presentation of facts or a recommendation for action." *Black's Law Dictionary* 1492 (10th ed. 2014). The word "obtain" is used as a modifier in the rule and means "[t]o bring into one's own possession; to procure, esp[ecially] through effort." *Id.* at 1247. Thus, the concept of obtaining a report for a hearing is separate from the

concept of a physical examination. A "physical examination" is "[a]n examination of a person's body by a medical professional to determine whether the person is healthy, ill, or disabled." *Id.* at 680. The concept of "obtaining" a report is separate from the process of "obtaining" an examination. Our legislature recognized as much by separately authorizing the commissioner to appoint "a duly qualified, impartial physician to examine the injured employee and make report." Iowa Code § 86.38. A medical report for purposes of a hearing is aligned with a prehearing medical deposition. In the context of the assessment of costs, the expenses of the underlying medical treatment and examination are not part of the costs of the report or deposition.

It is also important to recognize that our legislature separately provided for the *taxation* of costs "incurred in the hearing" and for the *reimbursement* of fees and transportation expenses "incurred for [an] examination." *See* Iowa Code § 85.39; *id.* § 86.40. Hearing costs are awarded in the discretion of the commissioner, while fees incurred by an employee for an independent examination and evaluation of disability permanency are separately reimbursed by the employer upon application to the commissioner. *Id.* § 85.39; *id.* § 86.40. The concept of reimbursement under section 85.39, as opposed to taxation, is consistent with the overall approach under the workers' compensation statute that makes the employer responsible for the medical care of an employee. *See id.* § 85.27. Yet, costs necessary to conduct a hearing adopt an entirely different approach predicated on the discretion of the commissioner. *See id.* § 86.40. Thus, a distinction exists under the statutory scheme between the taxation of costs incurred in a hearing and medical expenses incurred by an employee after the injury but prior to the hearing.

Accordingly, we reject Young's argument that hearing costs include the expenses of an independent examination because the examination is necessary to obtain a report on the results of the examination for a hearing. We agree that a physician's written report of an examination and evaluation under section 85.39 would be a reimbursable expense under section 85.39, just as an unreimbursed written report of an examination and evaluation, like deposition testimony and witness fees, could be taxed as hearing costs by the commissioner. Yet, a physician's report becomes a cost incurred in a hearing because it is used as evidence in lieu of the doctor's testimony. The underlying medical expenses associated with the examination do not become costs of a report needed for a hearing, just as they do not become costs of the testimony or deposition. The logic of Young's argument is not supported by the language of the governing statutes or the overall workers' compensation scheme.

Finally, when a general statute conflicts with a specific statute, the more specific statute normally prevails. *Kelly*, 525 N.W.2d at 411; *see also* Iowa Code § 4.7 (providing the special provision prevails if the statutes cannot be construed to give effect to both). This rule of statutory construction militates in favor of Iowa Code section 85.39 governing the assignment of IME fees, as it is a specific provision governing only a narrow subset of fees and expenses, whereas Iowa Code section 86.40 is a general provision otherwise governing "[a]ll costs incurred in the hearing before the commissioner." Iowa Code § 85.39; *id.* § 86.40; *see also Christiansen v. Iowa Bd. of Educ. Exam'rs*, 831 N.W.2d 179, 189 (Iowa 2013) ("[T]he more specific provision controls over the general provision."). Moreover, "Iowa statutes providing for recovery of costs are strictly construed." *Hughes v. Burlington N. R.R.*, 545 N.W.2d

318, 321 (Iowa 1996). Fee-shifting statutes using "all costs" language have been construed "to limit reimbursement for litigation expenses to those allowed as taxable court costs." *City of Riverdale v. Diercks*, 806 N.W.2d 643, 660 (Iowa 2011) (denying reimbursement for deposition expenses that did not comply with Iowa Rule of Civil Procedure 1.716).

We conclude section 85.39 is the sole method for reimbursement of an examination by a physician of the employee's choosing and that the expense of the examination is not included in the cost of a report. Further, even if the examination and report were considered to be a single, indivisible fee, the commissioner erred in taxing it as a cost under administrative rule 876—4.33 because the section 86.40 discretion to tax costs is expressly limited by Iowa Code section 85.39.

Our legislature established a statutory process to govern examinations of an injured worker in order to obtain a disability rating to determine the amount of benefits required to be paid by the employer. Neither courts, the commissioner, nor attorneys can alter that process by adopting contrary practices. If the injured worker wants to be reimbursed for the expenses associated with a disability evaluation by a physician selected by the worker, the process established by the legislature must be followed. This process permits the employer, who must pay the benefits, to make the initial arrangements for the evaluation and only allows the employee to obtain an independent evaluation at the employer's expense if dissatisfied with the evaluation arranged by the employer. Iowa Code § 85.39.

Young argues the process is unfair to workers because the employer has too much control over the evaluation and can impose adverse consequences on the employee. She argues the process unfairly limits her to one reimbursable, independent evaluation and could permit

employers to sabotage the claim process by failing to initiate the evaluation process. Yet, these arguments have been impliedly rejected by the legislature in enacting section 85.39. Additionally, the consequences feared by Young fail to consider the authority given to the commissioner by the legislature to order an examination and report of the injured worker by an impartial physician. *Id.* § 86.38. If an employer unduly delays in seeking an examination under section 85.39, or fails to obtain an examination, the employee may request the commissioner to appoint an independent physician to examine the employee and make a report. *Id.*

Overall, the evaluation process provided by our legislature was conceived at the same time the workers' compensation statute was conceived. *See* 1913 Iowa Acts ch. 147, § 12 (codified at Iowa Code § 2477-m11 (Supp. 1913)). *See generally* 1913 Iowa Acts ch. 147 (codified at Iowa Code §§ 2477-m through 2477-m50). It was part of the original purpose of the workers' compensation law to provide a prompt resolution of claims without litigation. *Shepard v. Carnation Milk Co.*, 220 Iowa 466, 469, 262 N.W. 110, 112 (1935). We must adhere to this process until otherwise directed by the legislature. At the center of this controversy is the battle of medical experts. If injured workers believe the battle favors the employer, the change sought must come from the legislature. We cannot interpret the statutory process to undermine or defeat the intent of the legislature.

**V. Conclusion.**

We conclude the commissioner erred in interpreting Iowa Code sections 85.39 and 86.40 (2009) and Iowa Administrative Code rule 876—4.33. We therefore affirm the decision of the court of appeals. We remand to the district court to remand the case to the commissioner for

further proceedings consistent with this decision. Only the costs associated with the preparation of the written report of Dr. Stoken can be assessed as costs of the hearing. We tax the costs of this action to Young, pursuant to Iowa Rule of Appellate Procedure 6.1207.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

All justices concur except Hecht, J., who dissents and is joined by Appel and Zager, JJ., and Appel, J., who dissents and is joined by Hecht and Zager, JJ.

#14–0231, *Des Moines Area Reg'l Transit Auth. v. Young*

**HECHT, Justice (dissenting).**

Every square is a rectangle, but not every rectangle is a square. Although Dr. Stoken apparently believed she was performing an examination and preparing a report under Iowa Code section 85.39 (a square), I find no reason for concluding the commissioner abused his discretion in concluding the doctor's report was taxable under the agency's rule on taxation of costs (a rectangle). Accordingly, I would vacate the decision of the court of appeals and affirm the district court's judgment affirming the commissioner's taxation of the cost of Dr. Stoken's report to Des Moines Area Regional Transit Authority (DART).

Just a few months ago, we concluded the Iowa Code "does not provide the sole basis for the [workers' compensation] commissioner to require an employer file a first report of injury." *Denison Mun. Utils. v. Iowa Workers' Comp. Comm'r*, 857 N.W.2d 230, 238 (Iowa 2014). The commissioner can therefore utilize delegated rulemaking authority to promulgate rules ensuring the same functional result in "circumstances beyond those already required" by the workers' compensation statutes. *Id.* Likewise, I believe Iowa Code section 85.39 does not provide the sole basis for the commissioner's authority to shift to the employer the reasonable cost incurred by claimants obtaining medical evidence based in part on an examination. In other words, this case illustrates another application of the principle we applied in *Denison*.

The commissioner has express statutory authority to tax costs in workers' compensation cases. Iowa Code § 86.40 (2009) ("All costs incurred in the hearing before the commissioner shall be taxed in the discretion of the commissioner."). The commissioner has implemented

this authority through an administrative rule specifying the categories of taxable costs. Iowa Admin. Code r. 876—4.33. The rule provides that costs may include "the reasonable costs of obtaining no more than two doctors' or practitioners' reports." *Id.* Rule 876—4.33 is, in my view, comfortably within the statutory authority granted to the commissioner. Section 86.40 vests the commissioner with discretion to tax costs; rule 876—4.33 merely defines which costs are taxable in the exercise of that discretion. Rule 876—4.33 does not *require* the commissioner to tax costs; it therefore does no more than the legislature authorized. Although the circumstances of this case did not authorize reimbursement to Young for Dr. Stoken's report under section 85.39 because DART had not obtained an evaluation of Young's permanent disability when Dr. Stoken prepared her report, the commissioner clearly had discretion to tax the reasonable cost incurred by Young in obtaining Dr. Stoken's report as a cost under section 86.40 and rule 876—4.33.

In evaluating the commissioner's exercise of discretion, we should consider the common purposes of section 85.39 and rule 876—4.33. The animating remedial principle undergirding the statute and the rule is that claimants must not be deterred by economic realities from obtaining and presenting evidence supporting their claims at a hearing. Through cost shifting, section 85.39 ensures claimants will be able to obtain and offer in evidence a physician's opinion on disability countering or supplementing an opinion obtained by the employer or its insurer.[1] *See*

---

[1]Although section 85.39 expressly provides that the commissioner may transfer the cost of an *examination* of the claimant and makes no express reference to the cost of a report resulting from the examination, the essential purpose of the statute aids claimants in obtaining medical *opinions* supporting their claims. *See* Iowa Code § 85.39. Because examinations under section 85.39 have no practical utility for a claimant or an employer if examining physicians do not memorialize relevant opinions in a report suitable for presentation at a hearing, it should come as no surprise that in

Iowa Code § 85.39. Rule 876—4.33 similarly aids claimants by permitting the commissioner to shift the cost of obtaining two experts' reports offered in evidence by the claimant at a hearing. *See* Iowa Admin. Code r. 876—4.33. Thus, the fundamental cost-shifting function of the statute and the rule is calculated to level the workers' compensation playing field by ensuring claimants lacking financial resources will be able to obtain and present medical evidence supporting their claims. In this important cost-shifting sense, physicians' reports and the opinions they communicate are fungible, whether the costs of obtaining them are shifted under section 85.39 or rule 876—4.33.

I believe the majority fails to consider another common feature of reports generated by physicians as a consequence of section 85.39 examinations and other reports generated by physicians and offered in evidence under rule 876—4.33. In both instances, physicians' reports express expert opinions routinely based on a factual foundation consisting of a recent examination of the claimant, the claimant's medical history as evidenced by medical records, and information about the alleged injury gleaned from the claimant and other sources in the particular case. If such reports fail to take account of any of these foundational elements, they will likely be criticized by the opposing party and be given less weight by the fact finder. Put another way, whether generated as a consequence of a claimant's invocation of the section 85.39 procedure or for presentation in evidence as an element of the

_____

the workers' compensation world the essential objective of a party invoking the benefit of the statute is a *report* expressing opinions on the nature and extent of the claimant's disability. Physicians performing examinations for claimants or employers under section 85.39 therefore routinely prepare reports documenting their opinions for presentation at hearings as an essential aspect of their work under the statutory procedure.

claimant's costs under rule 876—4.33, physicians' reports pack less probative force if they are not based on the same foundational components. A physical examination of the claimant is certainly a crucial foundational component of reporting physicians' opinions in workers' compensation cases. Because this is true, it seems sensible to expect that the cost of obtaining a medical report taxed under rule 876—4.33 would include the reasonable cost of an examination and would be similar in amount to the cost of obtaining reports generated as a consequence of examinations performed under 85.39.

The experts' written reports, whether generated for the claimant at the employer's cost as a consequence of a claimant's invocation of section 85.39 or for presentation by the claimant as evidence and taxed as a cost under rule 876—4.33, are routinely offered in evidence as exhibits at workers' compensation hearings in lieu of the physicians' much more expensive live testimony or deposition testimony. Because the factual foundation, content, and purpose of the reports are similar in each instance, I conclude they are for all practical purposes fungible for purposes of the commissioner's taxation of costs under the agency's rule.

Furthermore, the majority reaches a result likely to produce untoward consequences. Under the majority's interpretation, if Dr. Stoken had spent the same amount of time and issued an identical report in this case, but relied only upon extensive study of Young's existing medical records—and perhaps conducted additional research— the reasonable cost of her report would unquestionably be taxable under the agency's rule. As I have already noted, reports offered in evidence in workers' compensation cases and taxed under the agency's rule are routinely based in part on recent physical examinations of claimants. Such examinations are sensibly and routinely deemed essential

foundational work informing physicians' opinions detailed in medical reports. Indeed, the taxable cost of "obtaining" a report under section 86.40 and rule 876—4.33 has historically been based—and must as a practical matter surely continue in the future to be based—on more than the value of the physician's time as a scrivener.[2] We cannot expect physicians to donate their time when formulating the opinions they express in their reports in workers' compensation cases. To be sure, the universe of physicians willing to prepare reports in such cases will shrink drastically if compensation is denied them for time spent performing physical examinations informing their opinions.

I recognize we have stated section 85.39 is not intended "merely to aid the claimant's discovery." *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 194 (Iowa 1980). But the legislature has specifically given the commissioner authority to tax costs in his or her discretion. *See* Iowa Code § 86.40. I would defer, as this court routinely does, to the commissioner's interpretation of agency rules. *See, e.g., Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 518 (Iowa 2012); *Boehme v. Fareway Stores, Inc.*, 762 N.W.2d 142, 146 (Iowa 2009); *see also John Deere Dubuque Works v. Caven*, 804 N.W.2d 297, 300–01 (Iowa Ct. App. 2011); *cf. Franich v. Real Estate Comm'n*, 681 N.W.2d 620, 623 (Iowa 2004) ("[W]e give 'appropriate deference' to the view of the Commission with respect to the interpretation of . . . the rules adopted pursuant to the authority granted in [chapter 543B]."). The legislature has granted the workers' compensation commissioner authority to make and enforce

---

[2]I suspect DART's primary objection to the taxing of this particular cost stems from its $2800 price tag. The agency rule only allows the commissioner to tax *reasonable* costs. Iowa Admin. Code r. 876—4.33. If DART thought Dr. Stoken's fee was unreasonable in amount, it could have raised that argument before the commissioner. It did not.

"rules necessary to implement [the workers' compensation statutes]." Iowa Code § 86.8(1)(*a*). Section 86.40 is indisputably a workers' compensation statute granting the commissioner broad discretion to tax costs. Thus, our decision in this case should turn on whether the commissioner's interpretation of the agency rule implementing section 86.40 is "irrational, illogical, or *wholly* unjustifiable"—in other words, whether it calls every rectangle a square. Iowa Code § 17A.19(10)(*l*) (emphasis added). For all the reasons stated above, I do not think the commissioner's interpretation comes even close to violating this deferential standard of review. Accordingly, I respectfully dissent. I would affirm the taxation of the cost of Dr. Stoken's report and hold the reasonable cost of obtaining a physician's report under rule 876—4.33 includes time spent performing a physical examination of the claimant.

Appel and Zager, JJ., join this dissent.

#14–0231, *Des Moines Area Reg'l Transit Auth. v. Young*

**APPEL, Justice (dissenting).**

In my view, this case presents a relatively straightforward question of statutory interpretation.

The proper analysis begins with the general rule related to recovery of costs in a workers' compensation proceeding. This general rule is contained in Iowa Code section 86.40 (2009). This broadly framed cost-recovery provision states, "All costs incurred in the hearing before the commissioner shall be taxed in the discretion of the commissioner." *Id.*

There are several material features of this statute. First, "*All* costs incurred in the hearing" are potentially recoverable. *Id.* (emphasis added). Not some costs, but *all* costs.

Second, in order to be recoverable, the cost must be "*incurred in the hearing.*" *Id.* (emphasis added). A report that is prepared for a party, but for whatever reason is not used at the hearing, is not compensable under the plain language of the statute.

Third, the recovery of costs under Iowa Code section 86.40 is subject to the exercise of discretion by the commissioner. There is no statutory mandate that certain costs be recovered. Instead, there is a statutory directive that the commissioner award costs in the sound exercise of his or her discretion. *Id.*

Pursuant to this broad discretionary authority vested in the commissioner, the commissioner has promulgated a rule "to implement Iowa Code section 86.40." Iowa Admin. Code r. 876—4.33. This rule generally provides for the recovery of "the reasonable costs of obtaining no more than two doctors' or practitioners' reports." *Id.* r. 876—4.33.

And, a rule that allows for the recovery of the cost of obtaining a report must be interpreted to include recovery of more than the cost of

the physical components of the report or the cost of printing verbiage in it. It would be an odd rule that allowed recovery of the cost of physical production of a report only and not the cost of the mental processes required to prepare the report. If the mental processes required to prepare a report include an examination, then it necessarily follows that recovery of the cost of the examination is permitted in the discretion of the commissioner.

The majority somehow gets confused when it considers the relationship between Iowa Code section 86.40 and Iowa Code section 85.39. Iowa Code section 86.40, along with its implementing rule, Iowa Administrative Code rule 876—4.33, generally provides the framework for awarding all costs incurred in the hearing. Iowa Code section 85.39, however, does not deal with all costs incurred at the hearing in any way. Instead, Iowa Code section 85.39 is an exceptional provision that allows a claimant to recover the expense of a certain, narrow type of examination *prior* to and *unrelated* to any hearing. Further, recovery of costs under Iowa Code section 85.39 is *not subject to the discretion* of the commissioner. In short, Iowa Code section 85.39 provides for early mandatory payment of a narrow category of costs not incurred in a hearing provided the requirements of the section are met.

As noted by Justice Hecht, the obvious purpose of Iowa Code section 85.39 is to allow a claimant to obtain payment of the costs of a critical type of expert examination—one related to industrial disability—early in the workers' compensation process. It is an extraordinary provision with respect to the timing of cost recovery. It accelerates payment of costs for which the employee would ordinarily have to wait until the conclusion of the hearing. And, it eliminates any exercise of discretion by the commissioner. A failure to meet the requirements of

Iowa Code section 85.39 means that the party is not entitled to an early, mandatory payment of certain costs. Nothing more, nothing less.

The language of the statutes demonstrate that Iowa Code section 86.40, dealing with all costs incurred in a hearing in a workers' compensation case, and Iowa Code section 85.39, dealing with accelerated, upfront payment of an examination related to industrial disability under certain conditions, are not in the least bit inconsistent or in tension with one another. Nothing in Iowa Code section 85.39 impairs the discretionary authority of the commissioner to award all costs incurred in the hearing, pursuant to Iowa Code section 86.40. Conversely, Iowa Code section 86.40 does not undermine the mandatory duty of an employer to pay certain qualifying costs under Iowa Code section 85.39. The language of the two statutes creates a logical and coherent policy on cost reimbursement in a workers' compensation case.

There is also nothing in the overall structure of the statute that suggests, let alone requires, a different result. In that regard, it is important to note that Iowa Code section 86.40 solely addresses recovery of costs incurred in a hearing before the commissioner. The provision has *nothing* at all to do with medical treatment that the employer must pay as a benefit under our workers' compensation statute. It has *nothing* to do with the power of an employer to direct the course of treatment. It has *nothing* to do with unauthorized medical expenses to treat a worker. It has *nothing* to do with the entitlement to an independent medical examination. It only addresses potential recovery of all costs incurred at a hearing. *See, e.g., Albertini v. McDonald's*, 400 So. 2d 160, 161 (Fla. Dist. Ct. App. 1981) (distinguishing between statutory provisions authorizing reimbursement for medical treatment and a statute providing for recovery of costs of litigation).

On the issue of awarding all costs incurred in the hearing, Iowa Code section 86.40 is unqualified, not contradicted by any other statute, and must be given full effect. Our duty is to read statutes harmoniously when possible as it obviously is here, not to go out of our way to manufacture a nonexistent conflict to promote judicially discovered policy goals. *See Kolzow v. State*, 813 N.W.2d 731, 736 (Iowa 2012) ("If more than one statute relating to the subject matter at issue is relevant to the inquiry, we consider all the statutes together in an effort to harmonize them." (Internal quotation marks omitted.)). Indeed, our cases indicate we should conscientiously try to read statutes in harmony and limit the scope of a general statute only if there is an "irreconcilable conflict" with a more specific statute. *See, e.g., State v. Lutgen*, 606 N.W.2d 312, 314 (Iowa 2000) (quoting 82 C.J.S. *Statutes* § 355, at 474 (1999)). We do not find irreconcilable conflict by implication. *See, e.g., State v. Peters*, 525 N.W.2d 854, 856–57 (Iowa 1994) (noting statutes must actually conflict).

The majority does not follow this basic approach to statutory interpretation. Instead, it relies on a judicially discovered "legislative intent." The legislative intent discovered by the majority is not found in the text of the statutes or in the structure of the workers' compensation chapter, does not arise from a functional analysis of workers' compensation proceedings, and is not powered by some overriding policy consideration that provides a convincing rationale for a narrow interpretation of Iowa Code section 86.40. In sum, Iowa Code section 85.39 does not cast a grim and menacing policy shadow over Iowa Code section 86.40.

For the foregoing reasons, and the reasons more thoroughly canvassed by Justice Hecht, I would vacate the decision of the court of

appeals and affirm the district court judgment affirming the commissioner's taxation of the costs of the report by Dr. Stoken to the Des Moines Area Regional Transit Authority.

Hecht and Zager, JJ., join this dissent.