# IN THE COURT OF APPEALS OF IOWA

No. 15-1776
Filed April 27, 2016

**TYSON FOODS, INC.,**
        Petitioner-Appellant,

**vs.**

**EVELYN TEAH,**
        Respondent-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Joel D. Novak, Judge.

Petitioner appeals the district court's ruling affirming the workers' compensation commissioner's decision respondent was entitled to a running award of temporary total disability benefits. **AFFIRMED.**

Jean Z. Dickson and Brandon W. Lobberecht of Betty, Neuman & McMahon, P.L.C., Davenport, for appellant.

Gary B. Nelson of Rush & Nicholson, P.L.C., Cedar Rapids, for appellee.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

Petitioner, Tyson Foods Inc. (Tyson), appeals the district court's decision affirming the workers' compensation commissioner's award of benefits to respondent, Evelyn Teah. Tyson claims substantial evidence does not support the commissioner's finding Teah was entitled to a running award of temporary total disability benefits. We find there is substantial evidence in the record to support the commissioner's finding and affirm.

## I.    BACKGROUND FACTS AND PROCEEDINGS

Teah, who was fifty-two years old at the time of the administrative hearing, began working for Tyson in August 2010. She passed a physical exam when she was hired. She had prior left shoulder problems from previous employment, but the condition was asymptomatic. Teah worked in multiple positions at Tyson. Her first position involved separating hog stomachs from intestines. This task required her to repetitively lift approximately thirty pounds at a fast pace. After a month, her hands, wrists, and shoulders hurt, and she requested a position change. She was transferred to a new position "separating small intestines." The work was also fast paced and eventually caused her hands to "swell up" and also "affect[ed] [her] shoulder too." She transferred to another position, which involved cutting hog rectums traveling on a "[v]ery fast conveyor." Teah accidently cut herself twice while trying to perform this task. She was then transferred to a position that required her to shovel "pig heads" off the floor.

The placement of the shovel handle on her shoulder aggravated her shoulder, and on June 7, 2011, Teah experienced increased pain in her shoulder. The next day, she reported the pain to a nurse at Tyson. Teah

claimed her shoulder pain was ten on a pain scale of one to ten. On June 10 her pain level was an eight, on June 13 it was a seven, and on June 17 it was a five. The nurses gave Teah conservative treatment at first. On June 23, Teah was seen by Dr. Theophilus Oyelayo, who administered an injection for her right shoulder pain. She was diagnosed as suffering from "right shoulder subacromial bursitis."

Teah was seen by Thomas Dean, a physician's assistant, on June 30, and he recommended several weeks of work hardening. He placed her at maximum medical improvement (MMI) on July 14 with no follow-up appointments. Teah began the work-hardening regime on July 15, but she was pushed to exceed the limitations by her supervisor. Teah returned to Dean on September 20 and complained of increased shoulder pain. An x-ray showed superior rotator cuff calcific tendonitis, and Dean referred Teah to an orthopedic surgeon. She returned for a follow-up appointment on October 4. Dean reviewed her x-ray and confirmed Teah had a "severely calcified rotator cuff." Dean also mentioned Teah should consider a different line of work that did not require rapid repetitive motions.

The orthopedic surgeon, Dr. Brian Adams, evaluated Teah on November 29. An MRI scan showed "chronic calcific tendonitis." Dr. Adams found no evidence of a rotator cuff tear. On December 30, 2011, Dr. Adams opined in a letter to Tyson:

> Based on these findings I believe [Teah] can continue to monitor this conservatively if the symptoms are tolerable. As you know, her symptoms tend to vary over time and perhaps with different degrees of activity stress. She may benefit by shoulder arthroscopy which would include subacromial bursectomy with

decompression and debridement of the calcific tendinitis. However, this is not mandatory at this time, but rather should be based on her symptoms. I would allow the patient to make this final decision based on her symptoms. If she elected to proceed with surgery then I believe her symptoms can be substantially improved but she may still have some residual symptoms as well as need for permanent restrictions with respect to full forward reaching, overhead reaching, and rapid shoulder motions.

On January 23, 2012, Dr. Adams responded to a letter sent by Tyson containing prepared questions concerning the state of Teah's injuries.

1. What is your diagnosis?
*Right shoulder calcific tendonitis.*
2. What are your clinical objective findings upon examination today?
*Physical examination revealed good range of motion, but painful especially at the extremes of motion. Good strength in the nonpainful range. X-rays showed calcification in the subacromial area. MRI obtained subsequently show calcific tendonitis with some tendinopathy but no rotator cuff tears.*
3. Doctor, based on your exam, are you able to state within a reasonable degree of medical certainty that Ms. Wantoe Teah's present right upper extremity condition related to her work activities of 6/7/2011?
*No, but work activities did aggravate the condition.*
4. If yes, please explain the causative relationship.
*Her work activities more likely than not did cause an aggravation of the condition.*
5. If yes, did Ms. Wantoe Teah's work activities of 6/7/2011 cause a temporary or permanent aggravation of her present shoulder condition?
*A temporary aggravation.*
6. If temporary or no aggravation, we assume you are saying that the condition was progressive in nature and would have become symptomatic regardless of activity level. Is this correct?
*Yes, it would likely have become symptomatic at some point in time although the work activities could have caused it to become symptomatic sooner and perhaps with a greater degree of symptoms.*
7. *In my opinion, no further treatment is indicated at this time as it relates to the work-related symptoms of the shoulder. If symptoms become more severe then the shoulder may require arthroscopic treatment as a non-work related condition.*

After receiving the January 23 letter from Dr. Adams, Tyson denied liability and authorization for further medical treatment for Teah's injury. On January 31, 2012, Teah was asked to sign a non-work leave of absence. Teah refused and was placed on a leave of absence; she was eventually terminated.

Teah filed a workers' compensation action seeking entitlement to temporary and permanent benefits related to the work injury that occurred on June 7, 2011. An arbitration hearing was held before a deputy workers' compensation commissioner on May 2, 2013. On April 25, 2013, a different deputy (who had been delegated the authority by the commissioner) issued an arbitration decision finding Teah had proven a compensable injury had occurred and granted her a running award of temporary total disability benefits/healing period benefits. Tyson appealed to the workers' compensation commissioner, who issued a decision on April 1, 2015, affirming the deputy's decision. Tyson then filed an application for rehearing, which the commissioner denied. Tyson filed a petition for judicial review. The district court affirmed the commissioner's decision. Tyson now appeals.

## II. STANDARD OF REVIEW

Our review in this administrative action is governed by Iowa Code chapter 17A (2013). We apply the standards of section 17A.19(10) to the commissioner's decision and decide whether the district court correctly applied the law in its judicial review. *Des Moines Area Reg'l Transit Auth. v. Young*, 867 N.W.2d 839, 842 (Iowa 2015). "If we reach the same conclusions as the district court, 'we affirm; otherwise, we reverse.'" *Id.* (citation omitted).

We will reverse the commissioner's factual findings only if they are not supported by substantial evidence when the record is viewed as a whole. *Coffey v. Mid Seven Transp. Co.*, 831 N.W.2d 81, 89 (Iowa 2013). "Evidence is substantial if a reasonable mind would find it adequate to reach the same conclusion." *2800 Corp. v. Fernandez*, 528 N.W.2d 124, 126 (Iowa 1995). "Substantial evidence is more than a scintilla, but does not rise to the level of a preponderance of the evidence." *Etchen v. Holiday Rambler Corp.*, 574 N.W.2d 355, 359 (Iowa Ct. App. 1997).

"We do not consider the evidence insubstantial merely because we may draw different conclusions from the record." *Coffey*, 831 N.W.2d at 89. "On appeal, our task 'is not to determine whether the evidence supports a different finding; rather, our task is to determine whether substantial evidence . . . supports the findings actually made.'" *Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 889 (Iowa 2014) (alteration in original) (citation omitted).

## III.   ANALYSIS

Tyson claims there is not substantial evidence in the record to support the commissioner's finding Teah was entitled to a running award of healing period benefits. It claims the commissioner improperly rejected the opinions of Dr. Adams due to a perceived inconsistency in his opinions. It claims if Dr. Adams's opinions are rejected, then there is no additional expert medical evidence to support the commissioner's finding Teah is in a continuing period of temporary disability and entitled to a running award of temporary disability benefits.

Concerning this issue, the district court reasoned:

As found by the Commissioner and as argued by Teah's counsel, Dr. Adams, in his December 30, 2011, letter, stated that Teah may benefit by shoulder arthroscopy which would include subacromial bursectomy with decompression and debridement of the calcific tendonitis. He opined that this is not mandatory at this time but rather should be based on her symptoms. He suggested that Teah be allowed to make this final decision based on her symptoms, and if she elected to proceed with surgery he believes her symptoms could be substantially improved but that she may still have some residual symptoms as well as need for permanent restrictions with respect to full forward reaching, overhead reaching, and rapid shoulder motions. The Court agrees with the commissioner's conclusion that Teah is still in a healing period, and it cannot be determined if her condition is temporary or permanent until she has received all the medical treatment appropriate for her injury. Furthermore, if her condition is permanent, an assessment of industrial disability cannot be made until she has reached maximum medical improvement.

We agree with the district court's reasoning. Dr. Adams's January 23, 2012 letter states Teah's injury is "only a temporary aggravation" but later opines her shoulder may require surgery. Dr. Adams's December 30, 2011 letter also states Teah "may benefit by shoulder arthoscopy" though it was not mandatory at that time. Dr. Adams noted this determination "should be based on her symptoms." The commissioner did not reject Dr. Adams's expert opinion, as Tyson urges. Rather, the commissioner offered an interpretation of Dr. Adams's conflicting opinion. The issue of medical causation is essentially within the domain of expert testimony. *Dunlavey v. Econ. Fire & Cas. Co.*, 526 N.W.2d 845, 853 (Iowa 1995). The commissioner, as the finder of fact, determines the weight to be given expert testimony. *Id.* "The general rule, of course, is that expert opinion testimony, even if uncontroverted, may be accepted or rejected, in whole or in part, by the trier of fact." *Sondag v. Ferris Hardware*, 220 N.W.2d 903, 907 (Iowa 1974). Our task is not to determine if a different finding could

have been made, we only determine if substantial evidence supports the commissioner's finding. *Mike Brooks*, 843 N.W.2d at 889. Upon our review, we find substantial evidence supports the commissioner's finding and we affirm.

**AFFIRMED.**