BANNER COFFEE COMPANY and another, Appellants, vs. BILLIG and another, Respondents.

*October 9—November 4, 1919.*

*Workmen's compensation: Effect of failure to obtain medical treatment: Evidence of refusal: Finding of industrial commission.*

1. A teamster, kicked by a horse, who applied a salve used by him for slight injuries and continued at work until infection resulted, without consulting a doctor, although advised to do so, did not as a matter of law refuse to adopt such means for

recovery as an ordinarily prudent person would use under like circumstances, so as to defeat his widow's right to compensation.

2. The contention that an employer offered an employee medical attention, which he unreasonably refused to receive, cannot be predicated on a suggestion that he see a named doctor, where he was not told that the employer would pay the doctor or that he was the employer's physician.

3. In this case the evidence is *held* insufficient to show with the certainty essential to overcome a finding of the industrial commission that a teamster kicked by a horse would not have died if he had secured medical treatment at an earlier date.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

The appeal is from a judgment affirming an award of the *Industrial Commission* in favor of *Bertha Billig,* widow of Otto Billig, and against the appellants, in the sum of $3,000. The facts appear in the opinion.

For the appellants there was a brief by *Lines, Spooner & Quarles* of Milwaukee, and oral argument by *Charles B. Quarles.*

For the respondent *Industrial Commission* there was a brief by the *Attorney General* and *Winfield W. Gilman,* assistant attorney general, and oral argument by *Mr. Gilman.*

OWEN, J. On the 19th day of February, 1918, Otto Billig was in the employ of the *Banner Coffee Company* as a teamster. On that day he was kicked by a horse over the shin of his left leg. The injury did not appear to be serious, and Billig continued in the performance of his usual duties until the 27th day of February. In the meantime he applied carbolic salve, a remedy he always used in cases of a cut finger, etc., and bandaged it with a cloth. During the afternoon of February 27th he told a fellow-workman, "I can't do no more; everything is feeling numb; it is my back that shivers." He was told to go home and take care of himself. He went home, and on the same day the company was

advised by a telephone communication from his daughter that he was in serious condition. There was a similar telephone communication on the following day, February 28th, and on March 1st the company's doctor called to see him. The doctor found that he had a severely infected ulceration over the shin of his left leg, about the size of a dollar, with a temperature of 102½. He considered his condition very grave and had him removed to a hospital, where he died on March 4th as a result of infection.

At the time of the accident both the employer and the employee were subject to the provisions of the workmen's compensation act, which provides, among other things, as follows:

"Section 2394—3. Liability for the compensation hereinafter provided for, in lieu of any other liability whatsoever, shall exist against an employer for any personal injury accidentally sustained by his employee, and for his death, in those cases where the following conditions of compensation concur: . . .

"(2) Where, at the time of the accident, the employee is performing service growing out of and incidental to his employment. . . .

"(3) Where the injury is proximately caused by accident, and is not intentionally self-inflicted."

The widow, *Bertha Billig*, filed her application for compensation with the *Industrial Commission*. The *Commission* found "that on February 19, 1918, while in the employ of the respondent, performing service growing out of and incidental to his employment, the said Otto Billig accidentally sustained a personal injury; that as a result of said injury the said Otto Billig died on March 4, 1918; that the death of said Otto Billig was proximately caused by the injury sustained February 19, 1918, and was not intentionally self-inflicted," and awarded the said *Bertha Billig* the sum of $3,000. This action was brought to set aside such award.

It is contended by appellants that the proximate cause of

the death of Otto Billig was his refusal to adopt such means as an ordinarily prudent person would use under like circumstances, the undisputed record showing, as they contend, that the proximate cause of the infection was the failure to have immediate medical attention.    To this contention we find two answers, which will be stated, having in mind the rule contended for by appellants that the test is, "Did the injured employee refuse to adopt such means to effect a recovery as an ordinarily prudent person would use under like circumstances?"    *Lesh v. Ill. S. Co.* 163 Wis. 124, 131, 157 N. W. 539.    First, while conceding that persons highly appreciative of the dangers resulting from infection would at once consult a physician, we cannot say that this is true of the great mass of mankind under the same or similar circumstances.    It is matter of common knowledge that strong, healthy men engaged in manual labor frequently give such trifling injuries, which would arouse the apprehension of others, little thought, and in comparison with the number of such injuries the instances followed by infection are not numerous.    If they are treated at all, home remedies are applied, just as was done by the deceased.    Carbolic salve was his remedy for cuts, bruises, etc., and this he applied. The injury itself was not sufficient to keep him from his work, and he went about the performance of his daily duties, attaching little consequence to the injury.    We do not think it is customary for laboring men to rush to a doctor every time they sustain a cut, bruise, or abrasion of the skin, and we cannot say as a matter of law that the conduct of the deceased was not that of the great mass of mankind under the same or similar circumstances.

Point is made by the appellants of the fact that one of his fellow-workmen, immediately after the kick, told him he had better see a doctor.    The district manager also testified that he saw him on the morning of February 20th and he told him to go to Dr. Wetzler immediately; that he saw him a few days later and asked him whether he had been to see a doctor

and he said he had been treating himself; whereupon the district manager replied that he thought it would be best for him to go to a doctor and have him examine him, and he, deceased, said he would. The district.manager saw him again on the 25th of February, but did not then inquire whether he had seen a doctor, because he assumed he had.

Reversal is not sought on the grounds that the company offered deceased medical attention which he unreasonably refused to receive (*Lesh v. Ill. S. Co., supra*), and, in fact, upon the state of the record, such a contention could not be made, because it does not appear that deceased was told that Dr. Wetzler was the company's physician, or that the company would be responsible for the medical services. In fact, the testimony is that on the 20th the district manager told him to go and see Dr. Wetzler, while at the time of the second conversation he told him he had better see a doctor. In absence of any representation on the part of the company that it would be liable for the doctor's fees, it cannot be said that the deceased unreasonably refused to accept or receive medical services tendered to him by the company, and, as above stated, such defense is not urged. What was said to the deceased, therefore, by his fellow-laborer and the district manager amounted to nothing more than a suggestion on their part that he ought to see a doctor. It goes without saying that their opinion in this respect was no better than that of the deceased. He was in a position to judge of the necessity of consulting a doctor as well as they, and perhaps better.

The second answer to the contention made by appellants is the one made by the circuit court, and that is that it is not at all plain from the record that if he had consulted a physician his life would have been saved. Upon the hearing before the *Industrial Commission* Dr. Wetzler, the company's physician, was asked this question: "If an infection of that kind has started in a day or two after an accident of that kind and the man had obtained medical treatment, it would not be

difficult to clean up an infection, would it? *A.* Well, I won't say. Sometimes even with early treatment a severe type of streptococcic infection will prove fatal in spite of treatment, but those infections then develop almost immediately after the onset of the injury." In view of this evidence it may be said, as the learned circuit judge said in deciding the case, that "no one can say with the certainty that is essential in order to set aside a finding of the *Industrial Commission* that the injured workman increased his disability or met his death because of his failure to secure medical treatment at an earlier date."

*By the Court.*—Judgment affirmed.