JOHN DAUGHERTY, Appellee, v. SCANDIA COAL COMPANY et al., Appellants.

APRIL 3, 1928.

REHEARING DENIED JUNE 26, 1928.

*Mabry & Mabry,* for appellants.

*John T. Clarkson,* for appellee.

FAVILLE, J.—The claimant is a coal miner in the employ of the appellant coal company. It is conceded that he was injured while in the employ of said company, by a small piece of coal or dirt, getting into his right eye. Following the injury, and as a result thereof, he lost the sight of this eye. He had already lost 75 per cent of the vision in his left eye, prior to this injury.

Two questions are presented on this appeal: (1) The alleged willful and unreasonable misconduct of the appellee in regard to the care of the eye after the injury; and (2) the amount of the award, if any, that should be allowed.

I. Section 1399, Code of 1924, is as follows:

"After an injury, the employee, if so requested by his employer, shall submit himself for examination at some reasonable time and place within the state and as often as may be reasonably requested, to a physician or physicians authorized to prac-

tice under the laws of this state, without cost to the employee; but if the employee requests, he shall, at his own cost, be entitled to have a physician or physicians of his own selection present to participate in such examination. The refusal of the employee to submit to such examination shall deprive him of the right to any compensation for the period of such refusal. When a right of compensation is thus suspended, no compensation shall be payable for the period of suspension.''

Appellant's contention in this regard is thus stated in its brief:

''The claimant, by refusing to follow the instructions of the company doctor on the day following his injury, and by administering improper home treatment, and by neglecting to report to an eye specialist, as instructed, is guilty of such willful misconduct as to defeat a compensation award.''

A general outline of the facts upon which this contention is based is necessary. It appears from the record that the appellee was at work in the mine, with a pick, when a piece of dirt or coal lodged in his right eye. His son, who was working with him at the time, removed the same with a piece of match taken from his pocket, and the eye was wiped with a handkerchief which the miner carried. The injury occurred between nine and eleven o'clock in the morning. The appellee worked for the remainder of the day. The injury was reported to the mine foreman, who gave the appellee a written slip to report at the office of the company's doctor at Madrid, near which place the mine was located. The appellee so reported that evening, and received treatment, and under direction from the doctor, called at his office the following morning, where the eye was again treated. The evidence tends to show that the appellee informed the doctor that he was about to go to his home at Wanlock, which would require him to go through the city of Des Moines, and that the doctor at Madrid instructed or advised him to call upon a specialist in Des Moines for treatment of the eye, and gave the appellee the name and address of the doctor upon whom he should call. The evidence tends to show that the appellee came to Des Moines and made some inquiry, and attempted to locate the office of the doctor, but without success,

and finally went on to his home at Wanlock. The eye did not pain him at the time, but did later. His wife treated the eye, using a home treatment of boric acid. After the eye began to pain him, on the advice of a neighbor the wife put a potato poultice on the eye for about an hour. The evidence also tends to show that the appellee endeavored to come to Des Moines, but, the town where he lived being off of the railroad, it was necessary to drive a considerable distance, to reach a point where he could take the train for Des Moines. It appears that the roads were impassable, and that his attempt to get to Des Moines was without success, and that six days elapsed from the time of the injury until he finally went to Des Moines and submitted himself to an eye specialist for examination and treatment. It was then discovered that the eye was afflicted with serpiginous ulcer, and that it was impossible to save the eye; and the result was that the eye was enucleated. The evidence is in conflict as to the instructions given the appellee by the doctor at Madrid at the time of his injury. The appellee's contention is that he received no positive instructions to call upon the specialist in Des Moines, but that he was merely advised that it would be desirable for him to do so. He also contends that the doctor gave him the address of the Des Moines specialist as being in a certain building, and that he went to said building and made inquiry, and could not find the specialist. His evidence, in which he is also corroborated, is to the effect that he made repeated efforts to get to the train to return to Des Moines, but that he was unable to do so for the time which intervened.

Two questions arise at this point for our consideration. The first is whether or not the appellee was guilty of such misconduct, under the statute, as bars him of the right of recovery; and, secondly, whether or not his misconduct, if such there was, resulted in the loss of his eye. The appellant invokes the rule, which we have recognized, that, where the facts of a case are not in dispute, we may determine on appeal whether or not, on such undisputed facts, there is ''sufficient competent evidence in the record to warrant the making of the order or decision.'' Section 1453, Paragraph 4, Code of 1924; *Guthrie v. Iowa Gas & Elec. Co.*, 200 Iowa 150. But we have repeatedly declared and adhered to the rule that, where the competent evidence in a compensation case is in dispute as to a material matter, the find-

ing of the commissioner on such fact question is binding upon this court on appeal. In the case at bar, there is a clear and plain conflict in the evidence with regard to the direction given the appellee by the local physician at the time of the injury. Appellant contends that the local doctor evidently intended his instructions to the appellee to be imperative, and to require the appellee to consult the specialist in Des Moines on the day following the injury. The evidence of the appellee, however, is to the effect that the doctor merely advised the appellee to consult the Des Moines specialist on his way through the city, and that he used a reasonable endeavor to do so, and returned to the city as expeditiously as was consistent with the conditions of travel. The record shows that the appellee is hard of hearing, and the commissioner found that this may have contributed to a misunderstanding as to the directions given. In any event, there was a conflict in the evidence, and there is of record competent evidence to sustain the finding of the commissioner. This being true, it is binding upon us.

It is to be noted that our statute differs materially from that of some of the states which bar recovery for "willful or unreasonable" conduct of the employee, or contain similar provisions.

Section 1399, supra, is somewhat limited in its field of operation. Its quite obvious purpose was to require an employee to appear for "examination" at the instance of the employer, doubtless for the purpose of enabling the employer to ascertain the extent and character of the injury. Whether it is broad enough in its terms to require an employee to submit to a particular kind of treatment, as directed by the employer, is a question upon which we make no pronouncement. See, however, *Smith v. Marshall Ice Co.*, 204 Iowa 1348. See, also, *Jackson Coal Co. v. Industrial Commission*, 295 Ill. 18 (128 N. E. 813).

On the question as to whether or not the act of the appellee in failing to go to the specialist promptly was the cause of the loss of the eye, it is, to say the least, a fact question, to be determined under the evidence. Under the record, this question was left in the realm of conjecture and surmise. The testimony of the doctor on one question discloses the following:

"I don't want to make a statement to the effect that, if Daugherty had reported to me the day after he saw Dr. Shaw, instead of five or six days later, that his eye probably would have been saved. The probabilities would be that one could have probably done better, but not after it had gotten so far advanced. * * * I couldn't say that it is probable that, if I had seen this eye within a day or two after the injury, I could have prevented the spread of the infection from the ulcer. The probabilities as to whether or not the infection could have been prevented from spreading are sometimes almost 50–50. It all depends so much on other things. Of course, the thing to do is get the ulcer as quick as you can; but, irrespective of what you do, some ulcers will spread, in spite of anything you can do. It just seems to be due to the virulence of the infection, or the condition of the tissues of the man's organ. The same treatment carried out in two identical cases at the same time might not result alike at all."

The other specialist who examined appellee testified substantially to the same effect. At this point there is competent evidence in the record to sustain the finding of the commissioner to the effect that the failure of the appellee to visit the specialist and receive treatment did not result in the loss of the eye. We cannot reverse on this record. As bearing upon the question, see *Guthrie v. Iowa Gas & Elec. Co.*, 200 Iowa 150; *Banner Coffee Co. v. Billig*, 170 Wis. 157 (174 N. W. 544); *Moran v. Oklahoma Eng. & Mach. & B. Co.*, 89 Okla. 185 (214 Pac. 913).

II. The second question involved in this appeal is as to the correct amount of compensation. The industrial commissioner allowed the appellee weekly compensation during 100 weeks for the loss of one eye, and, 75 per cent of the vision of the other eye being lost at the time, made an additional allowance of compensation for 75 weeks, making a total of 175 weeks. Section 1396, Code of 1924, is, in part, as follows:

"Compensation for permanent partial disability shall begin at the date of injury and shall be based upon the extent of such disability, and for all cases of permanent partial disability included in the following schedule compensation shall be paid as follows: * * *

126

"16. For the loss of an eye, weekly compensation during one hundred weeks.

"17. For the loss of an eye, the other eye having been lost prior to the injury, weekly compensation during two hundred weeks. * * *

"19. The loss of both arms, or both hands, or both feet, or both legs, or both eyes, or of any two thereof, caused by a single accident, shall equal permanent total disability, to be compensated as such.

"20. In all other cases of permanent partial disability, the compensation shall bear such relation to the periods of compensation stated in the above schedule as the disability bears to those produced by the injuries named in the schedule."

It is the appellant's contention that the amount of compensation in this case is controlled by Paragraph 16, and is only for the loss of one eye, and should be limited to weekly compensation for a period of 100 weeks. Appellee contends that he is entitled to compensation for the permanent partial disability which resulted from the loss of the one eye, the other, being, at the time, impaired to the extent of 75 per cent of the vision. This was the view of the industrial commissioner and the trial court.

A brief review of the statute may be helpful at this point. The original act, Code Supplement, 1913, Section 2477-m9, provided for compensation "for the loss of * * * both eyes," and declared the same to constitute "total and permanent disability." The thirty-seventh general assembly (Acts of the Thirty-seventh General Assembly, Chapter 270, Section 7) amended this statute by inserting therein the clause "caused by a single accident;" so that, under it, the loss of both eyes "in a single accident" is to be thereby compensated for. This section is not applicable in the instant case, and is cited only as showing the provision made by the legislature for the loss of both eyes, and that it is now expressly limited to a loss "caused by a single accident." The thirty-eighth general assembly again amended the statute, by inserting the following paragraph (Acts of the Thirty-eighth General Assembly, Chapter 220, Section 6):

"(17) For the loss of a second or last eye, the other eye having been lost prior to the injury resulting in the loss of the

second eye, sixty (60%) per cent of the average weekly wages during two hundred (200) weeks.''

This somewhat redundant and tautological paragraph was re-enacted in the Code of 1924, as Section 1396, Paragraph 17, supra. This paragraph, however, is not controlling in the instant case. It provides for compensation for the loss of an eye, the other eye having been ''*lost*'' prior to the injury. It fits the case of the man with but one eye, who loses the other by an injury. Whether or not it contemplates that the first eye had been lost by an injury, compensable or otherwise, we need not determine. See, however, *Jennings v. Mason City S. P. Co.*, 187 Iowa 967.

In the instant case, the claimant's ''other eye'' had not been ''*lost* prior to the injury.'' It was defective, in that the vision was partially obliterated, presumably by natural causes. Reviewing the statutes, we find that Paragraph 19 does not apply; for it is not a case where *both* eyes are lost by a single accident. Likewise, Paragraph 17 does not apply, because it is not a case of the loss of an eye where the other eye has been *lost* prior to the injury. But we must consider a situation where there is the loss of one eye by the injury, the other eye not having been ''*lost*'' prior to the injury, but where the vision therein had been partially obliterated previously. Does the statute meet such a situation?

Under Paragraph 20 it is provided that:

''In all other cases of permanent partial disability, the compensation shall bear such relation to the periods of compensation stated in the above schedule as the disability bears to those produced by the injuries named in the schedule.''

It is contended that the injury in this case produced permanent partial disability that is not provided for by the express provisions of the statute, but comes within this section. That is to say, it is claimed that there was not only the loss of an eye, but that the loss of the eye produced permanent partial disability, due to the existing impairment of the other eye. The difficulty with the appellee's contention is that the express provisions of the statute, in precise terms, cover the situation. What was the injury to the claimant? It was exactly what the statute provides for in Paragraph 16,—namely, ''the loss of an eye.''

It was not the loss of both eyes by a single accident, nor was it the loss of one eye, the other having been previously lost. Such contingencies are provided for in the statute, but they do not arise under the facts of the instant case. Let us suppose that the defective eye had been the one destroyed by this injury, instead of the good eye, would it have been any defense to a claim for compensation for appellant to have urged that the injured eye was already defective 25 or 50 or 75 per cent? Suppose that appellee was now in the employ of appellant, and should lose his present defective eye, the other eye now being lost, could appellant successfully contend that compensation should not be awarded under Paragraph 17? Would it be a defense to a claim for full compensation in such a case, that three fourths of the eye was already ''lost?'' Certainly not. The case of *Pappas v. North Iowa Brick & Tile Co.*, 201 Iowa 607, does not control the instant case, and is consistent with our conclusion herein.

Section 1396, Paragraph 20, provides for ''all other cases of permanent partial disability:'' that is, ''all other cases'' of such disability not already provided for in the previous paragraphs of the section. But the case of the loss of an eye was already provided for in the section by Paragraph 16. It produced ''permanent partial disability,'' but it was expressly and definitely provided for by Paragraph 16, and compensation fixed thereunder. It is easily conceivable that an injury might produce permanent partial disability by a destruction of a portion of the sight in one or both eyes, without the ''loss'' of either eye. But we are not dealing with such an injury here. We have here the exact and definite thing that the legislature provided for,—namely, the total loss of an eye. Compensation for such loss is allowable under the definite terms of the statute. We can neither enlarge nor diminish the express provisions fixed by the general assembly. The legislature has not seen fit to make provision for additional compensation for the loss of an eye where the other eye is not already lost, but has been previously impaired by natural processes.

Under the statute, we see no escape from the conclusion that appellee's compensation must be limited to the loss of an eye, which, under Paragraph 16, is weekly compensation for a period of 100 weeks. The industrial commissioner and the trial court erred in making a greater award.

We are cited to numerous decisions of other courts, but an examination of such authorities shows that there is a wide divergence in the statutes, and that many of the cases arise under circumstances entirely different from those in the case at bar: for example, a number of the cited cases deal with a situation where the claimant has already entirely lost one eye, and lost the second by the injury complained of. Such a situation is covered by our statute, but does not meet the present case.

For the error in the amount of the award, the judgment must be modified to allow compensation for 100 weeks; otherwise, the judgment is affirmed.—*Modified and affirmed.*

STEVENS, C. J., and EVANS, DE GRAFF, ALBERT, MORLING, KINDIG, and WAGNER, JJ., concur.