# IN THE SUPREME COURT OF IOWA

No. 22–0471

Submitted December 14, 2023—Filed February 9, 2024

**MID AMERICAN CONSTRUCTION LLC** and **GRINNELL MUTUAL,**

Resisters,

vs.

**MARSHALL SANDLIN,**

Applicant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

An employee seeks further review of court of appeals decision that limited his reimbursement for an independent medical examination under the 2017 amendment to Iowa Code section 85.39(2). **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

Waterman, J., delivered the opinion of the court, in which all justices joined.

Stephen W. Spencer and Christopher S. Spencer of Peddicord Wharton, LLP, West Des Moines, for appellants.

Zeke R. McCartney of Reyolds & Kenline, LLP, Dubuque, for appellee.

**WATERMAN, Justice.**

In this appeal, we must determine whether the court of appeals correctly applied Iowa Code section 85.39, as amended in 2017, to limit an employee's reimbursement for an independent medical examination (IME). The workers' compensation commissioner awarded the full $2,020 charged by the physician, who opined that his own charge was reasonable. The district court affirmed, and we transferred the employer's appeal to the court of appeals, which reduced the reimbursement to $500 based on its interpretation of the amendment as limiting reimbursement to the impairment rating alone without the accompanying examination. We granted the employee's application for further review.

On our review, we hold that the employee is entitled to the reasonable cost of the examination accompanying the physician's determination of the impairment rating, not merely the component cost of the impairment rating itself. Under the 2017 amendment, reasonableness is to be based on the typical fee charged in the locale where the examination is performed. To determine the rating, the physician in this case examined and tested the claimant and reviewed records. Section 85.39, as amended, continues to allow reimbursement for the complete "examination" to ascertain the impairment rating, including these activities. The employee bears the burden to prove the reasonableness of the fee. Whether the fee is reasonable is a question of fact, and the commissioner's finding of reasonableness is to be affirmed if supported by substantial evidence. Here, however, the commissioner failed to make a finding required under the 2017 amendment as to the fee typically charged in that locale. Accordingly, we affirm in part and remand the case for the commissioner to conduct further fact-finding on that issue.

## I. Background Facts and Proceedings.

Marshall Sandlin, then age 42, began working at Mid American Construction LLC as a laborer in May 2017. On September 6, Sandlin was working in Dubuque on a two-story deck removing rotten boards. He was standing on a step ladder removing a trim board about ten feet off the ground when the ladder gave way. As he fell onto the concrete floor, his left foot caught on the ladder. Sandlin's foot hurt, but he tried to "walk it off." When he remained unable to put any weight on his foot without pain, he called his boss, who told him to come see him. His boss looked at Sandlin's foot and told him to "go home and put ice on it."

Sandlin stayed home for a few days, but his pain persisted. His boss told him to "[j]ust give it more time [and] just stay off work." Frustrated, Sandlin told his employer he needed to see a doctor. On Saturday, September 9, Sandlin, on his own initiative, saw Dr. Frederick Isaak at Medical Associates Clinic—his primary physician and the only clinic open that weekend. Dr. Isaak ordered X-rays that showed a possible fracture in Sandlin's fifth metatarsal. Dr. Isaak advised him to keep his foot elevated, use ice, and take ibuprofen for pain.

Dr. Isaak referred Sandlin to a podiatrist, Dr. Tracy Hughes, at Medical Associates Podiatry. Sandlin saw Dr. Hughes on September 13. She noted Sandlin's continued reports of pain and ordered Sandlin to wear a boot and use crutches. Sandlin returned to see Dr. Hughes the next month. Dr. Hughes observed that Sandlin's foot was improving and advised that he could return to work "full time without restrictions in 1 week."

On December 14, Sandlin underwent an IME by Dr. Erin Kennedy at Tri-State Occupational Health. The parties dispute how this IME was set. Sandlin later testified that Mid American's insurance carrier, Grinnell Mutual, had its medical case manager schedule the examination and directed Sandlin to

see Dr. Kennedy; the insurer argues that Dr. Hughes referred Sandlin to Dr. Kennedy. Regardless, Dr. Kennedy performed the examination in under thirty minutes and determined that Sandlin had reached maximum medical improvement. She assigned Sandlin a 0% impairment rating. Dr. Kennedy did note, however, that Sandlin continued to experience minor symptoms resulting from the fracture. The examination fee totaled $174.25. Other records show Dr. Kennedy regularly performs examinations for employers' insurers, including Grinnell Mutual.

In June 2018, Sandlin's counsel arranged for another IME by Dr. Mark Taylor at Medix Occupational Health Clinic in Cedar Rapids. Dr. Taylor spent more time examining Sandlin than Dr. Kennedy, spending about one hour with Sandlin. Unlike Dr. Kennedy, Dr. Taylor used instruments to test Sandlin's range of motion in his foot and ankle. He also made Sandlin perform walking and stretching exercises to determine Sandlin's discomfort in his foot, and he spent time reviewing Sandlin's medical history and records. Dr. Taylor diagnosed Sandlin's injury and assigned a 2% impairment rating to Sandlin's left foot for his work injury. Dr. Taylor also prepared a report outlining his findings, concluding with the following statement on his fees:

> The fees for this examination are reasonable based upon my training and certification in performing such examinations as a Board Certified specialist in Occupational and Environmental Medicine, as well as certification as an Independent Medical Examiner by the American Board of Independent Medical Examiners[,] the time spent with the examinee obtaining the history and performing the examination, the time spent in preparing this report, [and] the time spent by my staff preparing the file for use in preparing this report.

Dr. Taylor sent an invoice to Sandlin's counsel for $2,020. The invoice provided the following fee breakdown:

- IME Exam 1st Hour: $700

- IME Exam time greater than 1 hour: $209

- IME Report 1st hour: $700

- IME Report time greater than 1 hour: $411

Neither the invoice nor Dr. Taylor's report addressed the fees typically charged in the Cedar Rapids area for impairment ratings.

Sandlin sought reimbursement from Grinnell Mutual under Iowa Code section 85.39 (2018). Grinnell Mutual responded that it "will not be paying out the 2% rating assessed by Dr. Taylor" and "will not be reimbursing [Sandlin] for the IME report." Grinnell Mutual claimed that Sandlin was only "entitled to reimbursement of a reasonable fee for another impairment rating, not a full blown [IME]."

Sandlin filed a petition for arbitration seeking compensation benefits and full reimbursement for Dr. Taylor's examination. The parties stipulated that Sandlin "suffered an injury to his left foot which arose out of and in the course of employment on September 6, 2017." But Mid American disputed whether Sandlin suffered a permanent disability, the extent of any disability, and his eligibility to get his IME expense reimbursed.

A deputy workers' compensation commissioner conducted an evidentiary hearing. Sandlin testified that he "has a dull, throbbing pain in the mid to side of [his] foot" and that he is unable to engage in hobbies "as much as he did before" the injury. The deputy found Sandlin's testimony "believable." Exhibits introduced into evidence included Dr. Hughes's report, Dr. Taylor's report and invoice for his IME, and the letter from Grinnell Mutual denying reimbursement. Mid American introduced Dr. Kennedy's IME report and invoice as well as a separate document from Dr. Taylor's office, Medix, entitled "Examination Fees 7/1/2015–Present" setting forth the following fee schedule:

| | |
|---|---|
| Independent Medical Exam<br><br>Physician time billed at $95 per 15-minute increment. | $1400 Base Fee |
| Rush IME Report<br><br>Inside of 1-week from appt date/Inside of 3-weeks from appt date. | $750/$600 |
| Impairment Rating/Restrictions Exam<br><br>Includes cost for one body part. Additional $150 per addit body part. | $500 Flat Fee |
| Rush IR Report<br>Inside of 3-weeks from appt date. | $300 |
| File Review | $95 per ¼ hour |
| Phone Conference | $95 per ¼ hour |
| Letter Fee | $95 per ¼ hour |
| IME Cancel Fee<br>Less than 2-weeks notice | $500 |
| Impairment Rating Cancel Fee<br>Less than 2-weeks notice | $250 |
| IME No-Show Fee | $750 |
| Impairment Rating No-Show Fee | $300 |

The deputy's arbitration decision found Sandlin suffered a 2% impairment rating to his left leg and ruled that Sandlin qualified for reimbursement under Iowa Code section 85.39. The deputy ordered Mid American to reimburse Sandlin for his IME costs in the full amount of $2,020. The arbitration decision was silent as to the fee typically charged in Cedar Rapids for an IME.

Mid American filed a motion for rehearing, arguing that it did not "retain" Dr. Kennedy to evaluate Sandlin's impairment; therefore, he was ineligible for reimbursement for the IME by Dr. Taylor under Iowa Code section 85.39(2). Mid American alternatively argued that it only owed the cost of Dr. Taylor's impairment rating, not the rest of the examination charges, and that his charges

were unreasonable. Finally, Mid American requested modification of the deputy's arbitration decision based on the parties' stipulation that Sandlin had injured his foot, not his leg. The deputy modified the decision to refer to the foot. But the deputy disagreed with Mid American about the IME costs. The deputy determined that Sandlin "was directed to see Dr. Kennedy by the insurance carrier," meaning that Mid American "retained" Dr. Kennedy. The deputy left the reimbursement award of $2,020 intact, without addressing what fees are typically charged in the Cedar Rapids area.

Mid American appealed to the Workers' Compensation Commissioner. The commissioner affirmed the deputy's finding that Sandlin suffered a 2% impairment rating and affirmed the deputy's award of the full $2,020 cost of Dr. Taylor's IME. The commissioner found that Grinnell Mutual's medical case manager sought out "the appointment with Dr. Kennedy for the purposes of obtaining an impairment rating" and concluded that Mid American thereby "retained" Dr. Kennedy. The commissioner also found the costs of the IME were reasonable. The commissioner placed little weight on the bill for Dr. Kennedy of $174.25 without any breakdown or explanation of the charges or any disclosure of a fee-reduction agreement with the insurer. The commissioner found Dr. Taylor's explanation of the IME costs persuasive, however, and determined that Dr. Taylor's bill was reasonable. The commissioner addressed the Medix fee schedule and stated that "[p]resumably, this would be a case in which the less expensive impairment rating/restrictions exam would be appropriate." But the commissioner found that this "presumption" was "outweighed by Dr. Taylor's statement that his fees . . . are reasonable." The commissioner ordered Mid American to reimburse Sandlin $2,020—the full amount charged for the IME. The commissioner made no finding as to the amount typically charged in that locality.

Mid American filed this action for judicial review. The district court affirmed the commissioner's findings, including the impairment finding and the IME reimbursement of $2,020. Specifically, the district court reasoned:

> Therefore, while the legislature amended the law so that a reasonableness determination must address impairment ratings, it did not go so far as grant reimbursement *solely* for impairment ratings. As Petitioners point out, IMEs can have components beyond impairment ratings. They may also have opinions on causation, permanent restrictions, additional treatment, and maximum medical improvement for example. . . . Additionally, the amendment added a point of reference for reasonability comparisons, which is "based on a typical fee charged by a medical provider in the local area where the examination is conducted." Iowa Code § 89.39(2). The Commissioner applied facts to law when he determined that Dr. Kennedy's fee breakdown is not an appropriate comparison to Dr. Taylor. He found that Petitioners did not indicate whether Dr. Kennedy had fee-reduction agreements in place, which resulted in an incomplete picture of her fees and thus not a proper point of comparison to Dr. Taylor. On the other hand, the Commissioner found Dr. Taylor's fee statement reasonable, including the time spent on the report and time spent reviewing Sandlin's records. The Commissioner committed no error of law when he found that Dr. Taylor's full IME charge is allowable under Iowa Code section 85.39. Likewise, the Commissioner's findings of fact and application of law to facts are supported by substantial evidence and are not irrational.

(Citations omitted.)

Mid American appealed. Without challenging the 2% impairment rating, Mid American argued that "Sandlin was not entitled to reimbursement for the IME, and if he was, the amount was unreasonable." Mid American reiterated that it did not retain Dr. Kennedy to perform an examination to determine an impairment rating under section 85.39(2), and so Sandlin was ineligible for reimbursement for another IME by his chosen physician. Alternatively, Mid American argued that even if Sandlin was entitled to reimbursement for Dr. Taylor's IME expense, Mid American should only reimburse Sandlin the reasonable cost of the impairment rating itself, not any "additional costs to provide other opinions beyond impairment or even necessitate reviewing a great

deal of records." Sandlin countered that Mid American's insurer had scheduled the appointment with Dr. Kennedy and thereby "retained" her within the meaning of section 85.39(2). Sandlin also argued that section 85.39(2) requires reimbursement of the reasonable fee for the "examination," not just the impairment rating, and that substantial evidence supported the commissioner's finding that Dr. Taylor's IME fee was reasonable.

We transferred this case to the court of appeals. The court of appeals affirmed the district court's conclusion that "substantial evidence support[ed] the commissioner's determination that the employer and insurer, via the medical case manager, chose Dr. Kennedy to perform the examination." But the court of appeals reversed on the reasonableness of the IME costs, finding that section 85.39(2) provides for the "reasonableness of a fee" to be "based on the typical fee charged by a medical provider to perform an impairment rating." The court of appeals found that the 2017 amendment to section 85.39(2) "only allows for reimbursement of an examination based on the typical fee charged for an impairment rating, not the extent of information a full IME entails" and reduced the award to the $500 flat fee for an impairment rating.

We granted Sandlin's application for further review.

**II. Standard of Review.**

We review the commissioner's "legal interpretations of Iowa Code chapter 85 for errors at law rather than giving deference to those interpretations." *Gumm v. Easter Seal Soc'y of Iowa, Inc.*, 943 N.W.2d 23, 28 (Iowa 2020). "[W]e accept the commissioner's factual findings when supported by substantial evidence." *Id.* (alteration in original) (quoting *Bluml v. Dee Jay's Inc.*, 920 N.W.2d 82, 84 (Iowa 2018)). Substantial evidence means that "we must affirm [the commissioner] if there is enough evidence to support the finding," *IBP, Inc. v. Harpole*, 621 N.W.2d 410, 420 (Iowa 2001) (en banc), even if "we may

draw different conclusions from the record." *Coffey v. Mid Seven Transp. Co.*, 831 N.W.2d 81, 89 (Iowa 2013). "Under [Iowa Code] section 17A.19(10)(*f*), we may reverse, modify, or grant other appropriate relief when important findings of a workers' compensation decision were not supported by substantial evidence." *Bell Bros. Heating & Air Conditioning v. Gwinn*, 779 N.W.2d 193, 209 (Iowa 2010). It is a "well-established rule that chapter 85 is liberally construed in favor of the employee, with any doubt in its construction being resolved in the employee's favor." *Larson Mfg. Co. v. Thorson*, 763 N.W.2d 842, 859 (Iowa 2009).

**III. Analysis.**

We must decide whether the court of appeals erred in interpreting section 85.39(2) to limit the IME reimbursement to $500. First, we must determine the meaning of Iowa Code section 85.39(2) as amended in 2017. We hold that section 85.39(2) provides for reimbursement of the reasonable cost of the examination to determine the impairment rating, and the examination encompasses the records review, the physical examination and testing, and a written report. The court of appeals erred by limiting reimbursement to the impairment rating alone, without including the accompanying examination, and we vacate that part of the court of appeals decision.

Second, we must determine whether the district court erred in upholding the commissioner's award for the full $2,020 charged by Dr. Taylor for his IME. The commissioner failed to make a finding of fact necessary under the 2017 amendment: the fee typically charged in that local area. We reverse the district court on that issue and remand the case for further factfinding by the commissioner.

**A. The Meaning of Iowa Code Section 85.39(2) as Amended in 2017.** Sandlin argues that the district court and commissioner correctly interpreted section 85.39 to provide for reimbursements for the full examination and should

not be limited to only reimbursement for the impairment rating. Sandlin argues that the physician must review medical records and conduct a full examination to avoid "pulling a number out of thin air." Mid American argues section 85.39, as amended, limits reimbursement to the impairment rating component of the examination, as the court of appeals held.

We begin our analysis with the text of the statute. We quote in full Iowa Code section 85.39 as amended in 2017, with the language added that year in bold:

> 1. After an injury, the employee, if requested by the employer, shall submit for *examination* at some reasonable time and place and as often as reasonably requested, to a physician or physicians authorized to practice under the laws of this state or another state, without cost to the employee; but if the employee requests, the employee, at the employee's own cost, is entitled to have a physician or physicians of the employee's own selection present to participate in the *examination.* If an employee is required to leave work for which the employee is being paid wages to attend the requested *examination,* the employee shall be compensated at the employee's regular rate for the time the employee is required to leave work, and the employee shall be furnished transportation to and from the place of *examination,* or the employer may elect to pay the employee the reasonable cost of the transportation. The refusal of the employee to submit to the *examination* shall **forfeit** the employee's right to any compensation for the period of the refusal. Compensation shall not be payable for the period of **refusal**.

> 2. If an evaluation of permanent disability has been made by a physician retained by the employer and the employee believes this evaluation to be too low, the employee shall, upon application to the commissioner and upon delivery of a copy of the application to the employer and its insurance carrier, be reimbursed by the employer the reasonable fee for a subsequent *examination* by a physician of the employee's own choice, and reasonably necessary transportation expenses incurred for the *examination.* The physician chosen by the employee has the right to confer with and obtain from the employer-retained physician sufficient history of the injury to make a proper *examination.* **An employer is only liable to reimburse an employee for the cost of an *examination* conducted pursuant to this subsection if the injury for which the employee is being examined is determined to be compensable under this chapter or chapter 85A or 85B. An employer is not liable for the cost of such an *examination* if the injury for which the employee is**

**being examined is determined not to be a compensable injury. A determination of the reasonableness of a fee for an *examination* made pursuant to this subsection, shall be based on the typical fee charged by a medical provider to perform an impairment rating in the local area where the *examination* is conducted.**

2017 Iowa Acts ch. 23, § 15 (codified at Iowa Code § 85.39 (2018)) (emphasis added).

Section 85.39 "is devoted to the examination of an injured worker for the purpose of ascertaining 'the extent and character of the injury' for purposes of paying benefits in the event of a disability resulting from the injury." *Des Moines Area Reg'l Transit Auth. v. Young*, 867 N.W.2d 839, 843 (Iowa 2015) (quoting *Daugherty v. Scandia Coal Co.*, 219 N.W. 65, 67 (Iowa 1928)). In subsection 1, the employer may request the employee submit to an examination that is conducted by a physician of the employer's choice, and the employee must attend the examination or forfeit their right to any compensation "for the period of refusal." Iowa Code § 85.39(1). We conclude that substantial evidence supports the commissioner's finding that Dr. Kennedy was chosen by the employer's insurer to conduct that examination of Sandlin, and we affirm the court of appeals decision and district court ruling on that disputed issue.

In subsection 2, the legislature leveled the playing field between the employer and the employee. *See id.* § 85.39(2); *Young*, 867 N.W.2d at 844 ("The statutory process balances the competing interests of the employer and employee and permits the employee to obtain an independent medical examination at the employer's expense."). Subsection 2 entitles the employee to receive an examination if the employee believes the evaluation made by the employer's physician was too low. Iowa Code § 85.39(2); *Young*, 867 N.W.2d at 844. The employee's own examination "is known as an IME because the examination is independent of the examination done by the physician selected by the employer."

*Young*, 867 N.W.2d at 843–44. Here, Dr. Kennedy found zero impairment, which Sandlin believed was too low, triggering his statutory right to an IME by a physician of his choosing—Dr. Taylor.

Subsection 2, as amended in 2017, continues to expressly require the employer to reimburse the employee for the "reasonable fee for a subsequent *examination* by a physician of the employee's own choice." Iowa Code § 85.39(2) (emphasis added). This "is consistent with the overall approach under the workers' compensation statute that makes the employer responsible for the medical care of an employee." *Young*, 867 N.W.2d at 846; *see* Iowa Code § 85.27(1) ("The employer, for all injuries compensable under this chapter or chapter 85A, shall furnish reasonable surgical, medical, dental, osteopathic, chiropractic, podiatric, physical rehabilitation, nursing, ambulance, and hospital services and supplies therefor and shall allow reasonably necessary transportation expenses incurred for such services.").

The 2017 amendment added three sentences to the end of subsection 2. 2017 Iowa Acts ch. 23, § 15 (codified at Iowa Code § 85.39 (2018)). The first two sentences bar an employee from reimbursement if their injury is not compensable. *Id.*; *Tweeten v. Tweeten*, 999 N.W.2d 270, 282 (Iowa 2023). Today's case turns on the third sentence: "A determination of the reasonableness of a fee for an examination made pursuant to this subsection, shall be based on the typical fee charged by a medical provider to perform an impairment rating in the local area where the examination is conducted." 2017 Iowa Acts ch. 23, § 15 (codified at Iowa Code § 85.39 (2018)). The fighting issue in this case is whether the amendment narrowed the scope of reimbursement from the reasonable cost of the examination to the reasonable cost of the impairment rating alone. As the district court correctly concluded, "[T]he amendment added a point of reference for reasonability comparisons, which is 'based on a typical fee charged by a

medical provider in the local area where the examination is conducted.' " (Quoting Iowa Code § 85.39(2).)

Mid American argued, and the court of appeals agreed, that Sandlin should only be reimbursed for the cost of an impairment rating listed on the Medix fee schedule as $500, not the accompanying examination. We disagree. In our view, the commissioner and district court correctly interpreted the statute to allow the cost of the accompanying examination.

When determining the meaning of a statute, a core canon of statutory interpretation requires us to construe the statute as a whole. *See Iowa Ins. Inst. v. Core Grp. of Iowa Ass'n for Just.*, 867 N.W.2d 58, 72 (Iowa 2015); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167–69 (2012) [hereinafter Scalia & Garner, *Reading Law*] (stating that this canon "calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts"). Throughout section 85.39, the term "examination" is used twelve times—five times in subsection 1 and seven times in subsection 2. *See* Iowa Code § 85.39. Subsection 2 states that the employee shall "be reimbursed by the employer the reasonable fee for a subsequent *examination* by a physician of the employee's own choice, and reasonably necessary transportation expenses incurred for the *examination.*" *Id.* § 85.39(2) (emphasis added). Under the 2017 amendment, the employer must reimburse the employee "for *the cost of such an examination* [only] if the injury . . . is determined . . . to be a compensable injury." 2017 Iowa Acts ch. 23, § 15 (codified at Iowa Code § 85.39 (2018)) (emphasis added). Finally, the last sentence added in 2017 again refers to "the reasonableness of a fee for an *examination.*" *Id.* (emphasis added). Read as a whole, the statute still allows for the employee with a compensable injury to be reimbursed for the reasonable cost of the "examination." *See* Iowa Code § 85.39. The legislature did not change the

target of the fee reimbursement—i.e., the examination—when it amended the statute. The legislature instead defined how "the reasonable fee for a subsequent examination" would be determined—i.e., "based on the typical fee charged by a medical provider to perform an impairment rating in the local area." *Id.* § 85.39(2). Under our "whole text" analysis, reimbursement is not limited to the impairment rating but includes the accompanying examination.

The 2017 amendment effectively necessitates fact-finding by the commissioner on the fees typically charged in the local area where the examination is performed. Parties may offer evidence of the fees typically charged in that locality to support or challenge the fee charged in a particular case. And the amendment allows consideration of the agency's own experience adjudicating IME reimbursement claims in the local area where the examination is performed. In *Nguyen v. Hy-Vee, Inc.*, the commissioner observed that "many IMEs come before the agency, which allows the [commissioner] to use agency experience and expertise to conclude that [the physician's] charges are in line with those of an occupational medicine doctor with a practice in the . . . [local] area performing an evaluation of permanent impairment in accordance with the [*AMA*] *Guides*." Iowa Workers' Comp. Comm'n, No. 21003118.03, 2023 WL 7128682, at *32 (Oct. 20, 2023). We agree.

Under section 85.39, the Iowa Workers' Compensation Commission "has long awarded the full cost of an independent medical evaluation, including review of medical records and opinions pertaining to causation, restrictions, and future medical care." *Rekic v. Seehase Masonry*, Iowa Workers' Comp. Comm'n No. 5059846, 2019 WL 1326344, at *12 (Mar. 19, 2019); *see, e.g., Eisenbacher v. United Parcel Serv.*, Iowa Workers' Comp. Comm'n No. 979203, 1993 WL 13021569, at *3, *6 (Feb. 9, 1993) (awarding the employee the full cost of the IME, which was "conducted for purposes of litigation in order to obtain a

rating of impairment"); *Spike v. AALFS Mfg.,* Iowa Workers' Comp. Comm'n No. 913731, 1993 WL 13016106, at *5, *7 (Jan. 29, 1993) (awarding the employee the full cost of the IME and travel expenses). If the legislature wanted to change this practice, it could have amended the language allowing "the reasonable fee for a subsequent examination" to instead say that an employee could be reimbursed "the reasonable fee for an impairment rating." But it chose not to. "[W]e look to the language chosen by the legislature and not what the legislature might have said." *Ramirez-Trujillo v. Quality Egg, LLC*, 878 N.W.2d 759, 770 (Iowa 2016).

Other canons support our interpretation. A statute is to be "liberally construed with a view to promote its objects." Iowa Code § 4.2. We have stated that section 85.39 "should be accorded a logical, sensible construction which gives harmonious meaning to related sections and accomplishes the legislative purpose." *IBP, Inc. v. Harker*, 633 N.W.2d 322, 325 (Iowa 2001) (quoting *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 188 (Iowa 1980)); *see* Scalia & Garner, *Reading Law* 63 ("A textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored."). And when ambiguity arises in chapter 85, we liberally construe the statute in favor of the employee. *Thorson*, 763 N.W.2d at 859–60; *see also Bluml*, 920 N.W.2d at 91 (stating that "we have long applied the workers' compensation statute 'broadly and liberally in keeping with its humanitarian objective' " (quoting *Xenia Rural Water Dist. v. Vegors*, 786 N.W.2d 250, 257 (Iowa 2010))).

"The primary purpose of the workers' compensation statute is to benefit the worker and his or her dependents, insofar as statutory requirements permit." *Harker*, 633 N.W.2d at 325 (quoting *McSpadden*, 288 N.W.2d at 188); *see also Young*, 867 N.W.2d at 846 (stating that "the overall approach under the workers' compensation statute [is to] make[] the employer responsible for the medical care

of an employee"). The purpose of section 85.39(2) is to "balance[] the competing interests of the employer and employee and permit[] the employee to obtain an independent medical examination at the employer's expense." *Young*, 867 N.W.2d at 844. Reading the amended statute to continue requiring the reimbursement of the subsequent examination while clarifying how the reasonable fee is to be determined is a logical and sensible reading that furthers the purpose of the workers' compensation statute. *See Bluml*, 920 N.W.2d at 91.

Next, we construe the phrase "to perform an impairment rating." Iowa Code § 85.39(2). "Perform" is a key word in the last sentence of section 85.39(2). "Perform" does work. "Canons of statutory interpretation require that every word and every provision in a statute is to be given effect, if possible, and *not* deemed mere surplusage." *Vroegh v. Iowa Dep't of Corr.*, 972 N.W.2d 686, 703 (Iowa 2022) (emphasis in original); Scalia & Garner, *Reading Law* 174. Thus, we must determine what it means "to *perform* an impairment rating" as a physician. Iowa Code § 85.39(2) (emphasis added). We interpret this language in context with a related amendment that added a new subsection to section 85.34. *See* Scalia & Garner, *Reading Law* 252 (describing the "Related-Statutes Canon" as encouraging "laws dealing with the same subject . . . [to] be interpreted harmoniously"). This new subsection requires that "the extent of loss or percentage of permanent impairment" be "determined solely by utilizing the guides to the evaluation of permanent impairment, published by the American medical association," otherwise known as the *AMA Guides*. Iowa Code § 85.34(2)(*x*). Prior to 2017, "the [*AMA*] *Guides* were a tool the agency could use when determining the extent of permanent disability caused by an employee's work injury," but use of the guides was not required by statute. *Nguyen*, Iowa Workers' Comp. Comm'n, 2023 WL 7128682, at *27. "The [*AMA*] *Guides* contain a process for physicians to use when evaluating permanent impairment[,] with

the impairment rating punctuating that process." *Id.* ("Under the [*AMA*] *Guides*, the evaluation of permanent impairment is inextricably intertwined with assigning an impairment rating."). Thus, the commission has repeatedly found a physician's impairment rating to be unpersuasive when they do not use the *AMA Guides.* 15 John Lawyer & James R. Lawyer, *Iowa Practice Series Workers' Compensation* § 15.3, at 228 (2022–2023 ed. 2022); *see also Shrum v. Boldt Grp., Inc.*, Iowa Workers' Comp. Comm'n No. 5067317, 2020 WL 7338305, at *3 (Dec. 7, 2020).

The *AMA Guides* direct the physician to conduct various tasks to determine an impairment rating. The physician should determine whether the employee is at maximal medical improvement. Linda Cocchiarella & Gunnar B. J. Andersson, *AMA Guides to the Evaluation of Permanent Impairment* 19 (5th ed. 2001) [hereinafter *AMA Guides*]. The physician should know about any past injuries to the employee, and they do this by reviewing past medical records. *Id.* at 11–12. The physician should determine whether the work injury caused the impairment. *Id.* at 11; *see also Kern v. Fenchel, Doster & Buck*, No. 20–1206, 2021 WL 3890603, at *4 (Iowa Ct. App. Sep. 1, 2021) (finding that "there can be no disability determination arising out of a disability evaluation without a determination there was causation"). The physician should conduct a physical examination to assess the employee's status and perform accurate measurements. *AMA Guides* 21. The physician should determine a diagnosis. *Id.* at 22. Under the *AMA Guides*, a physician is to conduct multiple tasks to perform an employee's impairment rating. We construe section 85.39 together with section 85.34 to conclude that the "examination" required "to perform an impairment rating" must include the foregoing steps required under the *AMA Guides*.

This reading of the statute is bolstered by language used earlier in section 85.39(2). There, the legislature recognized there must be more to perform an impairment rating than simply giving a percentage. For example, section 85.39(2) allows "[t]he physician chosen by the employee . . . the right to confer with and obtain from the employer-retained physician sufficient history of the injury to make a proper examination." Iowa Code § 85.39(2). It would be nonsensical to give the employee's chosen physician the right to confer with the employer's chosen physician and obtain and review records but then deny reimbursement for that part of the IME.

We construe section 85.39(2) as amended in 2017 to require the employer to reimburse the reasonable cost of the examination that is conducted by a physician of the employee's own choosing. The reasonableness of the fees will be analyzed based on what physicians in that area typically charge to perform the impairment rating examination—which may include "the costs of reviewing medical records, conducting a physical examination, opining on causation, assessing permanent impairment, assigning restrictions, and addressing further treatment recommendations." *Turner v. NCI Bldg. Sys., Inc.*, Iowa Workers' Comp. Comm'n No. 1652235.01, 2022 WL 1787301, at *26 (Feb. 24, 2022). The court of appeals erred by basing the award on the impairment rating alone, without including the accompanying examination.

**B. The Reasonableness of Dr. Taylor's IME Fee.** We turn now to the commissioner's finding that Dr. Taylor's $2,020 IME fee was reasonable. We hold that the burden is on the claimant to show the reasonableness of his chosen physician's IME fee. *See* Iowa R. App. P. 6.904(3)(*e*) ("Ordinarily, the burden of proof on an issue is upon the party who would suffer loss if the issue were not established."); *see also Pexa v. Auto Owners Ins.,* 686 N.W.2d 150, 156 (Iowa 2004) (stating "the plaintiff has the burden to prove the reasonable value of the

[medical] services rendered"). The reasonableness of Dr. Taylor's fee is a question of fact to be decided by the commissioner. *See Quaker Oats Co. v. Ciha*, 552 N.W.2d 143, 154 (Iowa 1996). The commissioner's factual findings are binding on appeal if supported by substantial evidence. *Gumm*, 943 N.W.2d at 28.

The district court ruled that substantial evidence supported the commissioner's finding that Dr. Taylor's $2,020 IME fee was reasonable. An appellate court cannot substitute its judgment for the factfinder and find the facts anew. *See Harpole*, 621 N.W.2d at 418. The court of appeals erred by resetting the reimbursement amount to $500 based on a schedule of what Dr. Taylor apparently charges for an impairment rating alone. But we are unable to affirm the commissioner's $2,020 award because in our view, the commissioner's analysis and factfinding were incomplete considering the 2017 amendment to section 85.39(2).

We agree the commissioner properly considered Dr. Taylor's written opinion that "his fees, including the time spent with claimant, the time spent on the report[,] and the time spent reviewing claimant's records, are reasonable." *See Pexa*, 686 N.W.2d at 156 ("The reasonable value of medical services can be shown by evidence of the amount paid for such services or through the testimony of a qualified expert witness."). But in our view, under the 2017 amendment, an additional step is required in the agency factfinding: the reasonableness finding is to be "based on the typical fee charged by a medical provider to perform an impairment rating in the local area where the examination is conducted." Iowa Code § 85.39(2). That step is missing in the commissioner's decision. Sandlin offered no evidence as to what fees are typically charged in the Cedar Rapids area, and the commissioner made no finding on that issue. Today's opinion in this case is our first to clarify the meaning of the final sentence added in the

2017 amendment to section 85.39(2). Under analogous circumstances, we have remanded the case to reopen the evidentiary record for additional agency fact-finding. *See Gwinn,* 779 N.W.2d at 209 (remanding the case "for additional evidence to allow for a full and complete resolution of the issues presented under the legal standards clarified in this decision"). We take the same approach today. On remand, the parties may introduce additional evidence, and the commissioner shall make the reasonableness finding as provided under section 85.39(2) "based on the typical fee charged by a medical provider to perform an impairment rating in the local area where the examination is conducted." Iowa Code § 85.39(2). The commissioner should then award a reasonable fee for Dr. Taylor's examination.

**IV. Disposition**.

For these reasons, we affirm the decision of the court of appeals and the district court judgment that Dr. Kennedy was chosen by the employer's insurer to conduct that examination of Sandlin. We vacate the court of appeals decision that reduced Dr. Taylor's IME fee award to $500, and we reverse the district court ruling that awarded $2,020. We remand the case to the district court for entry of an order of remand for further proceedings before the workers' compensation commissioner consistent with this opinion.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**